STATE EX REL. RANKIN, ATTORNEY GENERAL, PLAINTIFF, *v.* THE BANKING CORPORATION OF MONTANA ET AL., DEFENDANTS.

THE TRUSTEES OF EPISCOPATE FUND, A CORPORATION, APPELLANT, *v.* GRAY, RECEIVER, ET AL., RESPONDENTS.

(No. 5,826.)

STATE OF MONTANA AND W. E. HARMON, TREASURER, APPELLANTS, *v.* GRAY, RECEIVER, ET AL., RESPONDENTS.

(No. 5,834.)

MITCHELL ET AL., APPELLANTS, *v.* GRAY, RECEIVER, ET AL., RESPONDENTS.

(No. 5,841.)

FAY, APPELLANT, *v.* GRAY, RECEIVER, ET AL. RESPONDENTS.

(No. 5,843.)

(Submitted September 15, 1926. Decided October 6, 1926.)

[251 Pac. 151.]

*Banks and Banking—Insolvency—Preference Rights—Sureties —Subrogation to Right of State to Preference — Deposits Made Under False Representations as to Bank's Solvency— Effect on Preference Right of Depositor.*

Banks — Insolvency — Paper Deposited for Collection — Bank Without Right to Accept Anything but Money, When—Preference Right.
1. A bank has no right to take anything but money in payment of paper it holds for collection, in the absence of an

---

1.   See 3 R. C. L. 635.

[77 Mont. 134.]

agreement or usage to the contrary; if it takes a check or draft and becomes insolvent before the money on it is actually received, the owner can claim in preference to the general creditors.

Same.

2. Under the above rule, *held* that where a bank took a draft in payment of a mortgage note deposited with it for collection and became insolvent before the money on it was received, the money in the hands of the receiver was impressed with a trust in favor of the owner of the note and the latter was entitled to a preference over .the bank's general creditors, no agreement or usage to prevent the application of the rule being shown.

Same—Deposit of Public Moneys—Preference Right of State.

3. Moneys coming into the hands of the state treasurer from the Industrial Accident Board and deposited by him in a bank were public moneys, and upon insolvency of the bank the state was entitled to a preference for the amount of its deposits in excess of the amount covered by depository bonds.

Same—Money Paid to Bank as Trustee for Mortgage Bondholders—Trust Funds—Preference Right.

4. Where a bank took a real estate mortgage in its name as trustee for the holders of bonds secured thereby and the mortgage was paid to the bank, the moneys so received, not being shown to have been commingled with the bank's funds generally, were trust funds, for payment of which the bondholders were entitled to a preference to the extent they could be traced to the possession of the receiver.

Same—State Deposits—Surety Company Subrogated to Right of State to Preference.

5. A surety company which had furnished depository bonds for state deposits and made payment of the amount secured by it upon the bank's insolvency, was subrogated to the right of preference which the state might have asserted in its sovereign capacity.

Same—Deposits Made Under False Representations as to Bank's Solvency—Depositor Without Preference Right.

6. The relation of a bank with a general depositor is that of debtor and creditor, and this relation is not changed into one of trustee and *cestui que trust* by alleged false statements of bank officers made to the depositor as to the bank's solvency, on the strength of which he abstained from cashing certificates of deposit after maturity and permitted the money to remain in the bank, and therefore the depositor is not entitled to a preference upon failure of the bank.

---

[1, 2]   Banks and Banking, 7 C. J., sec. 276, p. 614, n. 46, 47; sec. 277, p. 614, n. 50; p. 615, n. 55 New.

[3]   Banks and Banking, 7 C. J., sec. 543, p. 749, n. 56.

[4]   Banks and Banking, 7 C. J., sec. 548, p. 751, n. 78, 79.

[5]   Banks and Banking, 7 C. J., sec. 543, p. 749, n. 56. Subrogation, 37 Cyc., p. 426, n. 83.

[6]   Banks and Banking, 7 C. J., sec. 326, p. 642, n. 2; sec. 484, p. 732, n. 25.

3.   See 3 R. C. L. 644.
6.   See 3 R. C. L. 519.

. *Appeal from District Court, Lewis and Clark County; W. H. Poorman, Judge.*

RECEIVERSHIP PROCEEDING by the State of Montana, on the relation of Wellington D. Rankin, Attorney General, against the Banking Corporation of Montana in which Claude C. Gray was appointed receiver. From an order denying preferences, the Trustees of the Episcopate Fund, the State of Montana, Catherine L. Fay and A. D. Mitchell and others separately appeal. Modified and affirmed.

*Mr. E. C. Day,* for Appellant, The Trustees of the Episcopate Fund, a corporation, submitted a brief and one in reply to that of Respondent Receiver, and argued the cause orally.

Upon the admitted facts as set forth in the petition it is plain that the proceeds of the drafts which the Banking Corporation received as agent for the petitioner, for the purpose of paying the note and mortgage belonging to petitioner which the Banking Corporation held for collection, never at any time became the property of the Banking Corporation, nor did they pass into the hands of any other holder for a valuable consideration. That these proceeds were clearly identified upon the books of the Federal Reserve Bank of Helena and the Continental and Commercial National Bank of Chicago at the time the receiver took possession of the assets of the bank, seems to me to be equally plain. And we have here, not a case involving the right of a trust claimant to recover unidentified funds, or funds in the possession of innocent holders, but a case where the trust claimant has traced the particular proceeds into the hands of the receiver who is asserting no claim to them whatsoever, except that of the general creditors of the bank. In such a case the rule is clearly established by the authorities that the trust claimant is entitled to be paid out of these specific funds. (*Macy* v. *Roedenbeck,* 227 Fed. 346, L. R. A. 1916C, 12, 142 C. C. A.

42, see, also, the cases cited in L. R. A. 1916C, 30.)    The same rule has been laid down by this court and has not been modified in any of the recent decisions. (*Guignon* v. *First National Bank,* 22 Mont. 140, 55 Pac. 1051, 1097.)

*Mr. L. A. Foot,* Attorney General, and *Mr. A. H. Angstman,* Assistant Attorney General, for Appellant State of Montana, submitted a brief.

The claim of the state treasurer and the state of Montana is a preferred claim. (*Yellowstone County* v. *First Trust & Savings Bank,* 46 Mont. 439, 128 Pac. 596.)    The funds deposited were those of the Industrial Accident Board and were public funds. (See *State ex rel. School District* v. *McGraw,* 74 Mont. 152, 240 Pac. 812.)    If they were public funds, then the State's claim is entitled to priority, even though a bond were furnished. (*State ex rel. Rankin* v. *Madison State Bank,* 68 Mont. 342, 218 Pac. 652; *Aetna Accident & Liability Co.* v. *Miller,* 54 Mont. 377, L. R. A. 1918C, 954, 170 Pac. 760.)

*Mr. Wm. Scallon* and *Mr. Jos. R. Wine* for Appellant Catherine F. Fay, submitted a brief, and one in reply to that of Respondent Receiver; *Mr. Scallon* argued the cause orally.

It is, evident that, so far as this appellant is concerned, there is nothing to justify any finding that the moneys were held by the bank otherwise than in trust.    The moneys had been paid, to the bank as trustee of an express trust, had been received by the bank as such.    It was the duty of the bank to remit the moneys to the holders of the bonds, unless authorized by the holders of the bonds to retain or otherwise dispose of the funds.    In the case of the appellant, there having been no authority given to the bank to hold or otherwise dispose of the funds, the duty of the bank was to pay over and pay over at once.    We, therefore, have a simple, straightout case of moneys received by a trustee in trust for its

beneficiary and retained by the trustee without the knowledge or consent of the beneficiary.

The decisions of this court have established the proposition that funds collected by a bank for a creditor sending in a note or other security for collection are trust funds. (*Hawaiian Pineapple Co.* v. *Browne, Receiver,* 69 Mont. 140, 220 Pac. 1114.) If that is true of a collection, it is submitted that, *a fortiori,* it is true when moneys have been received by a trustee. Therefore, there is no evidence to show that the fund had been dissipated. In view of the circumstances, there can be no presumption that it had been. (*Hawaiian Pineapple Co.* v. *Browne, Receiver, supra; Lusk Development & Improvement Co.* v. *Günther,* 32 Wyo. 294, 232 Pac. 518; *Widman* v. *Kellogg,* 22 N. D. 396, 404, 39 L. R. A. (n. s.) 563, 568, 133 N. W. 1020; *Murray* v. *Bank,* 196 Iowa, 729, 735, 195 N. W. 354, 356.

*Mr. Chas. E. Pew,* for Appellants A. D. Mitchell et al., submitted an original and a reply brief, and argued the cause orally.

The Mitchell certificates of deposit came due in July and September, 1922. Mitchell made demand upon the bank for their payment, but by reason of the false representations of the president of the bank as to its solvency, refrained from insisting upon immediate payment. We contend that the status of these claimants is the same as though the officers of the Banking Corporation had paid their claims as they became due and had then induced appellants to redeposit their money. The bank had at that time funds on hand with which to pay the claims and it also had liquid assets from which the money could have been instantly realized. Under these appellants are entitled to be treated as though the money had been passed out and then passed back. Their rights are the same in equity. They are entitled to be treated as though that had actually been done. (*Hawaiian Pineapple Company*

v. *Browne, Receiver,* 69 Mont. 140, 220 Pac. 1114.)   Appellants became, as of the due dates of their respective certificates, the equitable owners of the moneys represented by the certificates, and this money being mingled with the other assets of the bank, the assets of the bank became impressed with a trust in favor of the appellants for the amount of their respective claims.   The question presented is whether this trust attached to the mass which had been enriched by appellants' money.   Originally the courts were inclined to hold that in a case of this character such a trust would attach only to the specific thing out of which the plaintiff had been defrauded. If it was money, the identical specie must be found.   The courts, however, realized that this principle was too narrow and held that the trust would attach to cash on hand, whether it was the same money which the claimant had deposited or not.   We submit that this is a fiction, as money is simply an asset of the bank the same as stocks, bonds, or any other property.   When the specific money becomes impossible of identification or it becomes impossible to trace it into any particular asset, the cash on hand loses its significance.   There is the same reason for holding that the trust attached to the mass of assets as for holding it attached to the cash on hand, so long as it cannot be traced into any particular item of property.

In the present case the assets were augmented by appellants' money and were necessarily greater to the amount of these claims than they would have been had the money been withdrawn and not redeposited.   Appellants' assets are absorbed in the mass and the only rational theory is that the trust became impressed on the mass.   (*National Bank* v. *Insurance Co.,* 104 U. S. 54, 26 L. Ed. 693 [see, also, Rose's U. S. Notes] ; *Frelinghuysen* v. *Nugent,* 36 Fed. 229; *McLeod* v. *Evans,* 66 Wis. 401, 57 Am. St. Rep. 287, 28 N. W. 173, 214; *Officer* v. *Officer & Pusey,* 127 Iowa, 347, 101 N. W. 484; *Raynor* v. *Scandinavian-American Bank,* 122 Wash. 150, 25 A. L. R. 716, 210 Pac. 499.)

The district court decreed to the Surety Companies a sovereign prerogative; that is to say, the court held that these companies temporarily occupy the throne of sovereignty. In asking the reversal of the court's order we are in effect seeking the reversal of the decision of this court in *Aetna Life Ins. Co.* v. *Miller,* 54 Mont. 377, L. R. A. 1918C, 954, 170 Pac. 760. We contend that the issues of law were not properly presented in the arguments in that case, and that the merits of the proposition were not passed upon. (Here follows an extended and interesting argument on the "Sovereign Prerogative," reproduction of which, want of space forbids.)

*Messrs. Stewart & Brown,* for Respondent Receiver, submitted a brief; *Mr. John G. Brown* argued the cause orally.

The trustees of the episcopate fund, a corporation: At the outset it is absolutely essential that two conditions shall be found before a preference claim of such a character as this can be recognized. First, there must be clearly established a trust relation, and secondly, there must be a tracing of the trust funds into the fund or assets upon which the trust is sought to be impressed. The determining factor as to the existence or nonexistence of a trust in the proceeds of a collection made by an insolvent bank, is whether or not the relation of debtor and creditor exists between the insolvent bank and those seeking to establish the trust. Where this relation does exist there is no trust. The courts differentiate as to what facts are necessary to constitute that relation. Some will place the emphasis upon banking customs and have allowed this to prevail even over the fact that the instrument may have been sent for collection only. The courts basing their decisions thus are ones that seem to recognize the force of public opinion. The general public cannot understand why there must be exceptions in recognized banking customs. It is in fact forceful to say that deposits of cash or for collection are made with a knowledge of the customs and procedure of

banking. If these customs and procedure are of such a nature as to have been generally known and recognized it seems reasonable to say that the customer depositing for collection deposited with a knowledge of these customs, and should be bound by them. The supreme court of Washington has held that:

If the holder of the draft which has been deposited for collection wanted to except it from the usual customary manner of making the collection there should have been an agreement that the specific money should be set aside for it and so the court regards the question of custom as a highly important factor. (*Hallam* v. *Tillinghast,* 19 Wash. 20, 52 Pac. 329; *McCormick Co., etc.,* v. *Tankton Bank,* 15 S. D. 196, 87 N. W. 974; *Philadelphia Nat. Bank* v. *Dowd,* 38 Fed. 172, 2 L. R. A. 480; *Commercial etc. Bank* v. *Davis,* 115 N. C. 226, 20 S. E. 370; *Union Nat. Bank* v. *Citizens Bank,* 153 Ind. 44, 54 N. E. 97; *Peter Shoe Co.* v. *Murray* (Tex. Civ. App.), 71 S. W. 977.) Upon this question of the effect of banking customs and usages being considered as part of the transaction an interesting note is found in 52 L. R. A. (n. s.) at page 537. (See, also, *Freeman National Bank* v. *National Tube Works,* 151 Mass. 413, 20 Am. St. Rep. 461, 8 L. R. A. 42, 24 N. E. 779.)

Massachusetts and New York have attempted in cases to follow this rule of bound by the customs of banks unless specific directions are given to the contrary. Other courts have regarded the question of whether or not the owner was a general depositor of the bank as the important one. Others have regarded as important the fact that the instrument was only for a special purpose of collection and not for credit as a determining factor. This would be most important, provided it was with specific directions, but if it is not, then it should be bound by the rules as to customs and usages of the bank. Where the relation of debtor and creditor does not exist, either from the evidence produced or because it was permitted to exist by custom of the bank, to the extent it

may have misled others, there is no trust. Where it is plain, and the proof should be clear and unimpeachable, that there was special agreement then a trust may be shown to exist. (*Guignon* v. *National Bank,* 22 Mont. 140, 55 Pac. 1051, 1097.)

We do not believe there is clear and unequivocal evidence that the deposit of the Smith notes with the Banking Corporation was a special arrangement for collection only, rather than an implied authority to the bank to follow the customs of banks and commingle the funds, and later remit by check or draft not the identical money but from the commingled or common fund.

Appellants have more than the trust relation to establish. They must further dispose of the question of whether or not the funds in the hands of the receiver have been impressed with the trust, and in this connection arises the more serious question as to the necessity and manner of identifying or tracing the trust funds. This question has recently been before this court in the case of *Hawaiian Pineapple Co.* v. *Browne,* 69 Mont., page 140, 220 Pac. 1114. There was no augmentation of the bank's assets proven in this case. It was merely a transmittal by the Bankinng Corporation of a draft payable to it and from which it expected to make deductions covering its collection charges. The deposits so transmitted were entirely absorbed; the trust gained nothing.

The State's Claim: We are of the opinion that the district court took the view that since the evidence positively identified the Industrial Accident Account as an Industrial Account, and that since it was moneys not raised or replaced by taxation it was not public money in the sense that it was used or held for the benefit of the public generally, or promotion of the general welfare, but on the contrary was a special fund held and distributed for a class or portion of society as distinguished from society as a whole; a fund to which neither the state nor society in general had access or right to, but was wholly a separate fund. It was not the sovereign's money and hence not to be preferred. We are inclined to think that

the opinion of this court in *State ex rel. School District* v. *McGraw*, 74 Mont. 152, 240 Pac. 812, decided since the court's findings in this case, disposes of this question in favor of the state.

Catherine L. Fay Claim: The claimant's bonds were called in the bank's letter of April 7, 1923. This claimant knew and acted upon this information, *viz.:* Sent them to her attorney for collection. They were never presented for payment. The attorney went with them to the bank but "it was after banking hours and instead of presenting them or leaving them for payment or collection he was careful to specify that they were left for 'safe keeping.'" While "safe keeping" may be of value as against the debtor or vitiate the "paid" perforation found in the bond, we believe it completely destroys the claim. Certainly it denies the appellant the right to claim that the bonds were presented for payment. The Hagen money (to pay the Fay bonds) was forwarded by the debtor to the bank because there is where the note was payable. The bank never having paid the holder of the bond, the bond is unpaid and Appellant Fay's rights are clear. Furthermore the debtor having forwarded the money to the bank made the bank his agent not the agent of Appellant Fay. (Magee on Banks & Banking, sec. 255; 3 R. C. L. 1289, 1290.) The Fay note was not paid and still is Hagen's obligation and Hagen still has a claim against the Banking Corporation, but by the very precautions which appellant's counsel took in not presenting his client's notes for collection the Fay claim has lost its right or its equity, and certainly it has no superiority against the funds now in the hands of the receiver and as against the claims of other creditors.

The Mitchell Claims: There is very little need for legal argument as to the Mitchell claims—a clear relation of depositor or debtor and creditor. These claimants are bound by the same rules as any other claimant who could seek to impress a trust upon assets in the hands of a receiver; that is to say, before they can do this they must establish first a trust claim, and

secondly must trace his trust funds into those held by the receiver, and their proof too must be, as indicated in the *Guignon Case* above, clear and unequivocal. Mr. Mitchell who acted as agent for his coclaimants took the stand himself, disregarded his attorney, and boldly told of his personal investigation made some months before, and admitted his failure to demand his money, his being convinced of the stability of the bank. This being true, there was no fraud practiced upon him. He professed to have the same information that the bank had. He certainly had the same opportunity for information that it had. Since he was not imposed upon, and since he did assume to make his own personal examination, and since the relation of debtor and creditor is clearly and convincingly established from the claim itself, it would seem the court's ruling in denying his preference was correct.

*Mr. E. C. Day* and *Mr. T. A. Mapes,* for Respondents Fidelity & Deposit Company of Maryland and American Surety Company of New York, submitted a brief, and argued the cause orally.

HONORABLE C. W. POMEROY, District Judge, sitting in place of MR. JUSTICE GALEN, disqualified, delivered the opinion of the court.

The Banking Corporation of Montana, being insolvent, failed to open its doors for business on the morning of the 2d of May, 1923. The district court appointed Claude C. Gray receiver, and he entered upon the discharge of his duties May 16, 1923. During the interim the bank was in the hands of the state bank examiner. On the seventh day of January, 1925, the receiver filed his petition No. 49 in the district court, setting forth that various creditors of the bank were asserting preferences and asking that the court make an order requiring all such creditors to appear and prove their claims. The order was made, and, after notice given, numerous creditors presented claims for preference. After a full hearing,

the court made an order allowing preferences to certain creditors and denying preference to the others. Among the preferred claims allowed were a number aggregating $1,980.77, to be paid proportionately out of the amount of cash on hand in the bank when it failed—$1,891.67. Trustees of the Episcopate Fund, a corporation, were denied a preference and appeal. The state of Montana was denied a preference and appeals. Catherine L. Fay was denied a preference and appeals. A. D. Mitchell, Grace Mitchell and Martin Clancy appealed from the order in so far as it denied a preference to them and also in so far as it granted a preference to Fidelity & Deposit Company of Maryland, and American Surety Company of New York. Pursuant to stipulation of all the parties involved, the appeals are consolidated in this court.

## The Episcopate Fund Appeal.

The Trustees of the Episcopate Fund, a corporation, purchased from the Banking Corporation a note and mortgage [1, 2] which became due February 1, 1922. On February 16, 1923, the Trustees of the Episcopate Fund delivered the note and mortgage to the Banking Corporation, with instructions to collect the same or institute proceedings for the foreclosure thereof. On April 30, 1923, the Banking Corporation accepted in payment of the note and mortgage a draft drawn on the Old National Bank of Spokane for $1,314, and one drawn on the National Park Bank of New York City for $743.32. The amount due was $2,027, and the balance of $30 of the aggregate of the drafts belonged to the Banking Corporation. On April 30, 1923, the Banking Corporation indorsed the Spokane draft to the Helena Branch of the Federal Reserve Bank of Minneapolis and deposited it with that bank for collection. The draft was then forwarded to the Spokane Branch of the Federal Reserve Bank of San Francisco and paid to that bank May 1. Credit was thereupon given to the Helena Branch Bank. The latter bank never gave credit to the Banking

Corporation on out of town items until notified of payment by due course of mail. The proceeds of the collection did not come into the hands of the Banking Corporation, but were applied by the Helena Branch Bank on the Banking Corporation's indebtedness. On final settlement with the Helena Branch Bank, there came into the hands of the receiver $1,390.79 in cash and approximately $80,000 in pledged securities.

On April 30, 1923, the Banking Corporation remitted the draft for $743.32, drawn on the National Park Bank of New York City to its correspondent, the Continental & Commercial National Bank of Chicago. That bank collected the draft and applied the proceeds on the indebtedness of the Banking Corporation. Sufficient of the securities pledged to the Chicago bank by the Banking Corporation were collected by the receiver to wholly discharge the indebtedness of the Banking .Corporation. Thereupon the rest of the securities pledged to the Chicago bank were turned over to the receiver and became a part of his trust.

"Except by agreement or usage a bank has no right to take anything but money in payment of paper it holds for collection. If it takes a check, it is agent of the drawer in collecting the check, and not until the money is obtained has it fulfilled its duty as agent of the holder of paper. So that, although it has had such check certified and has credited the amount to the owner of the paper, it is agent to collect; yet, if it becomes insolvent before actually receiving the money on such check, the owner can claim in preference to the general creditors; proceeds received subsequent to insolvency being held in trust." (1 Morse on Banks & Banking, 5th ed., 247.) To the same effect, see Selover on Bank Collections, page 242, Zane on Banks & Banking, page 299, and 2 Michie on Banks & Banking, pages 1395, 1399, 1433.) The record in this case contains no evidence of agreement or usage to prevent the application of the rule.

"As between the *cestui que trust* and trustee, and all parties claiming under the trustee, otherwise than by purchase for valuable consideration without notice, all property belonging to a trust, however much it may be changed or altered in its nature or character, and all the fruit of such property, whether in its original or its altered state, continues to be subject to or affected by the trust." (3 Pomeroy's Equity Jur., 4th ed., p. 2398, and note.) It follows that the cash and pledged securities which came into the hands of the receiver from the Helena Branch Bank and the pledged securities which came into his hands from the Chicago bank came charged with the trust of the Trustees of the Episcopate Fund. Such a result is a logical sequence of the holding of this court in the *Stanton Bank Case,* which was an appeal from the same order from which this appeal was taken. The decision in that case would necessarily have been the same had the Stanton Bank made its claim only after the funds and securities had reached the hands of the receiver. In that event, the Helena Branch Bank would have paid the receiver $9,965.67 instead of $1,390.79. (*State ex rel. Rankin* v. *Banking Corporation,* 74 Mont. 491, 241 Pac. 626.)

### State's Appeal.

The state claimed preference for moneys deposited with the bank in excess of the amount covered by depository bonds. [3] The court denied a preference to the state to the extent of the moneys deposited by the state treasurer which had come into his hands from the Industrial Accident Board, and from this action of the court the state appeals. These funds were public moneys, under the decision of this court in *State ex rel. School District* v. *McGraw,* 74 Mont. 152, 240 Pac. 812, rendered since the date of the district court's order, and the state is entitled to the preference. There is a dispute between the attorney general and the attorney for the receiver as to the amount involved. The correct amount of the additional preference to be allowed is $1,503.75, as given in the order of the district court.

### Appeal of Catherine L. Fay.

On the first day of May, 1918, the Banking Corporation took a real estate mortgage in its name as "trustee for the holders [4] of the obligations hereby secured." The secured obligations were thirty-two bonds for $500 each, payable to "the Banking Corporation of Montana, trustee or bearer." Bonds numbered 1 and 2 matured November 1, 1918, and bonds numbered 31 and 32 matured May 1, 1926. The *habendum* clause in the mortgage reads: "To have and to hold the above-described property unto the trustee to its own proper use, benefit, and behoof, forever, but in trust, nevertheless, under the terms of this mortgage deed, for the uses and purposes herein set forth."

The mortgage provided: "The trustee, whenever the said bonds shall have been paid in full and according to the terms and provisions in said bonds and herein contained, will deliver to the grantors a good and sufficient deed of acquittance and release hereof."

At some time prior to December 1, 1922, Catherine L. Fay purchased six bonds numbered 24 to 29. No indorsement or assignment appears on any of the bonds. On February 19, 1923, G. W. Casteel, as president, and O. A. Tweed, as secretary, executed in the name of the Banking Corporation as trustee, a full satisfaction of the mortgage, which was recorded in Chouteau county on March 24, 1923. Among the papers of the Banking Corporation which came into the hands of the receiver was its draft on the Continental & Commercial National Bank of Chicago, payable to the order of Mrs. Catherine L. Fay, signed by O. A. Tweed, cashier, for $3,105. The principal and accrued interest of all the bonds, together with an agreed penalty for anticipated maturity, were paid the Banking Corporation on or prior to March 23, 1923, and probably as early as February 19. The bank had the address of Mrs. Fay. On April 7, 1923, G. W. Casteel, as president, wrote her, at her street address at Waterbury, Connecticut, as follows:

"The next semiannual interest payment on the above bonds will be May 1st. Arrangements have been completed for paying the loan off as soon as the bonds can all be gathered in. You will please turn your bonds in to us at your convenience, and within the next ten days or two weeks, so that the details can be properly completed. We have in process of closing now a very splendid loan on a high-class hotel property, and the loan will be divided into $500 bonds, bearing 7 per cent. interest. These bonds should be ready for delivery by May 1st. We consider them high class in every respect and will be pleased to recommend them as an investment for the money coming on the Hagen bond payment. We will make reservation of such number of bonds as you may want, until the total has been subscribed. Let us know if we shall hold some for you. We will be glad to give you full detailed information regarding this loan, if you are interested."

On Saturday, April 28, 1923, Mr. William Scallon, as attorney for Mrs. Fay, called at the bank after banking hours and presented the bonds to O. A. Tweed, the cashier. He received no satisfaction from Tweed, who told him he would have to see the president, Casteel, who was not at the bank. The bonds were left with the bank for safekeeping. They were found among the bank's papers, perforated "paid." When the bank closed there was $1,891.67 in money on hand. It had on deposit in banks $19,270.45. It does not appear that, at any time before the bank closed and after the bonds were paid, the amount of money in the bank was less than when it closed. It does not appear that any of the money received by the bank in payment of the bonds was commingled with the funds deposited in banks. The receiver was a witness at the trial. Mrs. Fay's claim was presented, in due course, to the receiver, as a preference claim, and allowed as a general claim in the amount of $3,210. The court confirmed the action of the receiver, and claimant appealed.

"If a mortgage is made to one person to secure several notes or bonds made to him, and the mortgagee assigns the

notes or bonds to different persons, but continues to hold the mortgage security in his own name, he will hold it in trust for the several persons to whom he has assigned the mortgage notes, bonds, or other evidences of the debt due to him." (2 Perry on Trusts, 6th ed., 753.) "Trustees for bondholders are governed by the general rules that govern trustees in the ordinary performance of the duties of a trust." (*Id.* 760.) "In all matters connected with his trust, a trustee is bound to act in the highest good faith toward his beneficiary, and may not obtain any advantage therein over the latter by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind." (Sec. 7888, Rev. Codes 1921.)

The funds of the bondholders became a trust fund in the hands of the Banking Corporation, and, so far as such trust funds are traced to the possession of the receiver, they are impressed with such trust, and the bondholders are entitled to a preference to that extent. In this case, the amount of funds so traced is $1,891.67. (*Hawaiian Pineapple Co.* v. *Browne,* 69 Mont. 140, 220 Pac. 1114.) What has been said does not conflict with the holding of this court in *Yellowstone County* v. *First Trust & Savings Bank,* 46 Mont. 439, 128 Pac. 596. The decision in that case was based on the construction of the agreed statement of facts. The court said: "The recital that the county funds were 'commingled with the funds of said bank,' cannot be given any other meaning than that such county funds were commingled with all the funds of the bank. The expression, 'the funds of said bank,' means all the funds of the bank, and since the deposits in the correspondent banks constituted portions of this bank's funds, the recital must be held to mean that the county funds were mingled with the funds comprising each of these several deposits."

Mrs. Fay is entitled to a preference in the amount of cash in the bank when it closed *pro rata* with other preferred claimants of the same class.

**Appeals of A. D. Mitchell, Grace Mitchell and Martin Clancy.**

The appellants each held certificates of deposit in the bank which matured in July and September, 1922. These certificates were renewals of certificates covering a period of years. Their claims aggregate $44,206.01. Grace Mitchell and Martin Clancy were represented in their dealings with the bank by A. D. Mitchell. The appellants claimed preference for the reason that they left their money in the bank in consequence of false and fraudulent representations as to the solvency of the bank, made by G. W. Casteel, its president, to A. D. Mitchell, which they believed and upon which they relied. They offered to prove the insolvency of the bank during all the period from the maturity of the certificates to the closing of the bank. The offer was denied. The certificates were neither paid nor renewed. A review of the evidence as to the representations is unnecessary. The appeal is from a denial of the preference.

These parties further appealed from the order of the district [5] court allowing preferences to the American Surety Company and the Fidelity & Deposit Company of Maryland. These companies had furnished depository bonds for deposits of state funds made by the state treasurer. They paid the state's claim under the bonds and demanded preference by reason thereof. The appellants particularly question the allowance of the preference as to moneys deposited by the state treasurer in the estray account of the state livestock commission.

The right of the state to a sovereign preference in the assets of an insolvent bank and the right of a surety to be subrogated thereto were fully considered and upheld by this court in the case of *Aetna Accident & Liability Co.* v. *Miller,* 54 Mont. 377, L. R. A. 1918C, 954, 170 Pac. 760, and again in the case of *State ex rel. Rankin* v. *Madison State Bank,* 68 Mont. 342, 218 Pac. 652. The rule of these cases is, in the absence of legislation to the contrary, supported by the overwhelming weight of authority and is now reaffirmed. Since

the rights of the parties became vested before the enactment of Chapter 132, Session Laws of 1925, that Act has no application to this case.

The state was entitled to a preference for the moneys in the estray account for the reasons heretofore stated in this opinion in considering the state's appeal.

Counsel states in his brief: "Obviously, from a common **[6]** sense standpoint, appellants' situation is, so far as the specific assets are concerned, the same as that of one who deposited $40,000 in cash under false pretenses." This statement is fallacious. The appellants, when the representations were made, were and had been for many years general depositors. The relation of a bank with a general depositor is that of debtor and creditor. (*Pethybridge* v. *First State Bank,* 75 Mont. 173, 243 Pac. 569; 1 Perry on Trusts, 122; 2 Michie on Banks & Banking, 883.) It would be a strange doctrine that would permit a creditor to impress his debtor's property with a trust simply because, when the creditor attempted to collect the debt, the debtor falsely represented his ability to pay and thereby obtained forbearance.

In *Venner* v. *Cox* (Tenn.), 35 S. W. 769, the court of chancery appeals of Tennessee had under review a case where the depositor was induced to leave his deposit in an insolvent bank by the false and fraudulent representations of its president. The contention of the depositor was disposed of in the following words: "But this case is one simply of creditor and debtor, wherein the debtor, by a series of egregious lies as to his solvency and ability to pay his debts, induces his creditor to forbear pressing the payment of his demand and to continue his creditor. If such misrepresentations operate in equity to divest title to property, and to convert debtors into trustees for their creditors, we apprehend that the field of trust estates will be immensely enlarged." The case is cited with approval in 7 C. J. 732, and 1 Michie on Banks & Banking, 594, note 1. The district court was right in rejecting appellants' offer of proof and in denying them a preference.

The cause is remanded to the district court, with directions to modify the order appealed from by allowing the further preferences hereinbefore indicated, and when so modified the order will stand affirmed.

*Modified and affirmed.*

MR. CHIEF JUSTICE CALLAWAY, ASSOCIATE JUSTICES STARK and MATTHEWS, and HONORABLE THEODORE LENTZ, District Judge, sitting in place of MR. JUSTICE HOLLOWAY, disqualified, concur.