No. 92-551

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

ANDREA "ANDY" BENNETT, State Auditor
and Commissioner of Insurance of
the STATE OF MONTANA,

     Plaintiff and Respondent on Claim Appeal,

  -vs-

GLACIER GENERAL ASSURANCE COMPANY,

     Respondent and Respondent,


MISSOULA HOTEL DEVELOPMENT ASSOCIATES,

     Claimant and Appellant.


APPEAL FROM:  District Court of the First Judicial District,
               In and for the County of Lewis and Clark,
               The Honorable Jeffrey M. Sherlock, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

          Ronald B. MacDonald; Datsopoulos, MacDonald &
          Lind, Missoula, Montana

     For Respondent:

          J. Dennis Moreen and Patrick M. Driscoll;
          Chronister, Driscoll & Moreen, Helena, Montana


Submitted on Briefs:  May 27, 1993

Decided:  July 27, 1993

FILED

Filed:

JUL 27 1993

El Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Missoula Hotel Development Associates appeals from an order of the First Judicial District Court, Lewis and Clark County, designating its claim against the liquidated Glacier General Assurance Company for return of a $250,000 retained deposit as a Class 4 priority claim. We affirm.

The sole issue on appeal is whether Missoula Hotel Development Associates established a preferential right to $250,000 of the remaining assets of Glacier General Assurance Company.

In 1983, Missoula Hotel Development Associates (MHDA), a limited partnership, was created to develop a Sheraton Hotel in Missoula, Montana. To partially finance the project, MHDA negotiated a $9,350,000 loan with First National Bank of Minneapolis (First Bank). As a condition of the ten-year loan, First Bank required MHDA to secure the obligation with a financial guarantee bond issued by an insurance company. First Bank suggested Glacier General Assurance Company (Glacier) as a potential provider of the bond.

On December 29, 1983, MHDA and Glacier executed a financial guarantee bond that provided security for the $9,350,000 loan with First Bank. John Hayden, the president of Glacier, insisted that MHDA pay the premium of the bond, approximately $778,950, in advance and also provide a "retained deposit" of $250,000. The deposit, a standard practice in the industry, was intended to provide Glacier with a sufficient cushion to meet three months of

2

payments on the underlying loan should MHDA default. Glacier would receive all accumulated interest on the retained deposit during the length of the loan and, if no default occurred, the $250,000 would be returned to MHDA when it satisfied its obligation to First Bank.

On December 30, 1983, Glacier deposited MHDA's check of $1,028,950, representing the retained deposit and the prepaid bond premium, in its general operating account with First National Montana Bank of Missoula. For accounting purposes, the $250,000 was shown as an asset under "cash on hand" and as a liability under "amounts withheld or retained by the company for the account of others." Douglas Hartz, assistant deputy liquidator with the State Auditor's office, testified that, from his review of Glacier's books, virtually every type of transaction took place through the general operating account. Glacier deposited all income from premiums and deposits, paid expenses and purchased investments through this general checking account.

On March 12, 1985, upon petition by the State Auditor and Commissioner of Insurance (Liquidator), the District Court ordered Glacier into rehabilitation pursuant to § 33-2-1332, MCA, of the Insurers Supervision, Rehabilitation, and Liquidation Act. On November 12, 1985, the District Court declared Glacier insolvent and ordered it into liquidation. MHDA petitioned the District Court to order the Liquidator to return its funds on deposit with Glacier. The court concluded that it lacked jurisdiction and dismissed the petition. We affirmed the dismissal in Bennett v. Glacier General Assurance Co. (1987), 229 Mont. 538, 748 P.2d 464.

MHDA timely filed claims with the Liquidator for the unearned portion of the $778,950 prepaid premium and the entire $250,000 retained deposit, asserting preference over claims by other Glacier creditors. The Liquidator accepted both claims in their entirety but recommended Class 4 priority treatment. MHDA objected to the Liquidator's priority classification and the disputed claims process provided in § 33-2-1368, MCA, was initiated.

Pursuant to § 33-2-1368(2), MCA, the District Court appointed a referee to hear MHDA's claims. MHDA alleged that the retained deposit was held in trust for MHDA and, thus, was not available for distribution by the Liquidator. As to the prepaid premium, MHDA alleged that it had been fraudulently obtained by Glacier.

The referee tried MHDA's claims and subsequently issued his opinion, findings of fact and recommendation that both the retained deposit and the unearned premium be given Class 4 priority treatment under § 33-2-1371, MCA. With regard to the retained deposit, he concluded that MHDA and Glacier had established a trust and that MHDA had traced the trust funds to Glacier's general operating account. However, he also determined that the general operating account dropped to a negative balance between the time the trust funds were deposited and Glacier's insolvency. Therefore, MHDA's trust property was extinguished, the trust ceased to exist, and MHDA's right to preferential treatment from the account was eliminated.

The District Court adopted the referee's recommendations. MHDA appeals, contesting only the Class 4 priority designation of

the retained deposit.

Did MHDA establish a preferential right to $250,000 of the remaining assets of Glacier?

The parties do not dispute the referee's findings of fact. Instead, MHDA contends that the referee misapplied the law in concluding that the trust property had been extinguished. Our review of legal conclusions is plenary. Steer, Inc. v. Dep't of Revenue (1990), 245 Mont. 470, 475, 803 P.2d 601, 603.

In the present case, the parties agree that MHDA traced the trust property to the general operating account and that Glacier commingled the trust property with its own money in that account. It is well-established that when trust funds are commingled with private funds, the entire mixed fund will be impressed with the trust to the extent of the trust funds, except to the extent that the trustee may be able to distinguish and separate his own from the trust funds. Yellowstone County v. First Trust & Sav. Bank (1912), 46 Mont. 439, 442-3, 128 P. 596, 599; Hawaiian Pineapple Co. v. Brown (1923), 69 Mont. 140, 148, 220 P. 1114, 1116. The trust property need not remain in its original form if the trust property is held by the trustee and the beneficiary can trace the trust property to its substituted form. State v. Banking Corp. of Montana (1926), 77 Mont. 134, 150, 251 P. 151, 153; Yellowstone County, 128 P.2d at 599; Restatement (Second) of Trusts § 202 (1) (1959). Thus, it is clear that MHDA may impress a trust upon Glacier's general operating account.

However, MHDA is entitled to a $250,000 preferential claim to

5

the trust property in the general operating account only if the trust property continues to exist. Restatement, § 74. Unless MHDA can trace the $250,000 to another asset, MHDA's preference to the funds in the general operating account cannot exceed the amount of the lowest balance on hand between the time of deposit of the trust funds and the time of liquidation. See Hawaiian Pineapple, 220 P. at 1116 and Banking Corp., 251 P. at 153-4. The low balance is often referred to as the "lowest intermediate balance."

The theory behind this principle is that, if the amount of cash in the account reached a figure lower than the amount of the trust funds and later reached a higher figure, it is conclusive that some of the trust funds were dissipated, and other funds deposited. Because the deposits made after the account reached the lowest intermediate balance were made by persons other than the beneficiary, the beneficiary has no preference to the remaining funds in the account. Hawaiian Pineapple, 220 P. at 1116. Comment j to § 202 of the Restatement further explains that:

> [w]here a trustee deposits in a single account in a bank trust funds and his individual funds, and makes withdrawals from the deposit and dissipates the money so withdrawn, and subsequently makes additional deposits of his individual funds in the account, the beneficiary cannot ordinarily enforce an equitable lien upon the deposit for a sum greater than the lowest intermediate balance of the deposit. . . . If after the deposit of the trust funds in the account the deposit was wholly exhausted by withdrawals before subsequent deposits of the trustee's individual funds were made, the beneficiary's lien upon the deposit is extinguished, and if he is unable to trace the money withdrawn, he is relegated to a mere personal claim against the trustee, and is entitled to no priority over other creditors of the trustee.

Here, testimony and exhibits of record establish that Glacier

6

deposited the $250,000 in the general operating account on December 30, 1983. Sometime between October 19 and 22, 1984, Glacier's general operating account reached the negative balance of -$328,777.72. Glacier was ordered into liquidation on November 12, 1985. Thus, when the account reached the lowest intermediate balance in 1984, MHDA's trust funds in the account were dissipated and its right to a preferential claim against Glacier was extinguished as well. Any subsequent deposits into the general operating account were made with funds which MHDA has no right to claim.

MHDA agrees that it has the burden of tracing the trust property, but argues that it need only establish that the combined values of Glacier's stocks, bonds and cash on hand did not fall below the amount of the trust funds. MHDA asserts that Glacier commingled the retained deposit with stocks and bonds and, therefore, that it is entitled to impress a trust on the commingled aggregate of those three liquid assets. Thus, according to MHDA, the principles of Hawaiian Pineapple are satisfied because the lowest intermediate aggregate values of the three assets did not fall below the amount of the trust property. We disagree.

Although MHDA characterizes the stocks, bonds, and cash on hand as a commingled mass of general funds, the stocks and bonds were separate assets held by Glacier, not merely separate accounts deposited at the same bank as the general operating account. Glacier's financial statements show that it owned a variety of classes and amounts of stocks and bonds. The evidence also

7

established that retained deposits were treated as a separate liability and were debited only to the "cash on hand" asset account. MHDA's assertion that the three assets were commingled accounts that were continuously "in the bank, so to speak" is incorrect.

Further, MHDA claims that Glacier's counsel testified that Glacier commingled the cash, stock and bond accounts to limit litigation, characterizing the stocks and bonds as "other general funds." In fact, Glacier's counsel did not mention stocks or bonds in the portion of his testimony relied on by MHDA; he testified only that the trust monies were commingled with Glacier's other general funds. We cannot agree that Glacier's counsel's reference to "other general funds" included Glacier's separate stock and bond assets. We conclude that MHDA did not establish that Glacier commingled the funds from the general operating account with the stocks and bonds. Without a commingling of the three assets, MHDA is not entitled to aggregate the values of the three assets and, therefore, cannot overcome the result dictated by the principles of Hawaiian Pineapple.

As explained above, if MHDA could trace the $250,000 from the general operating account to the purchase of another asset, it would be entitled to impress a trust upon the substitute property. See Yellowstone County, 128 P. at 599; Banking Corp., 251 P. at 153; Restatement, § 202 (1). In this case, we conclude that MHDA did not trace the $250,000 to the subsequent purchase of any other asset.

8

Glacier's counsel testified that funds from the general operating account were used to purchase stocks and bonds, but testimony also established those funds were used for nearly all of Glacier's business transactions. Glacier's counsel did not identify any transaction in which MHDA's $250,000 retained deposit was used to purchase either stocks or bonds. Doug Hartz testified that, from his review of the books, he could not identify any $250,000 investment from the operating account during the relevant time period and that Glacier had no documentation identifying which funds were used to purchase stocks and bonds. Although Glacier previously had purchased such investments with funds in the general operating account, this fact alone does not establish that MHDA's $250,000 retained deposit was used to purchase stocks and bonds; nor does it begin to identify the particular stocks and bonds upon which MHDA would be entitled to impress a trust.

We faced a similar situation in Banking Corp. There, a banking customer presented a $3,210 claim against a failed bank. The bank had $1,891.67 on hand when it closed its doors and $19,270.45 deposited in other banks. Banking Corp., 251 P. at 153-4. Without evidence that the customer's $3,210 was commingled with the funds deposited in other banks, we concluded that the customer had only traced the trust funds to the $1,891.67 on hand and, therefore, was entitled to a preference only to that extent. Banking Corp., 251 P. at 153-4.

Similarly, MHDA traced its retained deposit only to Glacier's general operating account; it did not establish that its $250,000

9

was commingled with or used to purchase any other assets. Therefore, MHDA did not establish a preferential right to $250,000 of Glacier's remaining assets. We hold that the District Court did not err in adopting the referee's recommendation and in concluding that the retained deposit is a Class 4 priority claim.

Affirmed.

_____
Justice

We concur:

_____
_____
_____
_____
Justices

10

July 27, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Ronald B. MacDonald
Datsopoulos, MacDonald & Lind
201 W. Main, Central Square Bldg.
Missoula, MT 59802


Robert A. Kudrna
Montana Guaranty Assn.
P.O. Box 2168
Great Falls, MT 59407


Dexter L. Delaney
P. Mars Scott
Mulroney, Delaney & Scott
P.O. Box 8228
Missoula, MT 59807-8228


Stacey Weldele-Wade
Worden, Thane & Haines
P.O. Box 4747
Missoula, MT 59807


Robert G. Mullendore
Attorney at Law
310 W. Spruce
Missoula, MT 59802


Steven Durkovich
Box 26781
Albuquerque, NM 87125

Carlos Solis
Kindel & Anderson
555 S. Flower St., 26th Floor
Los Angeles, CA  90071


Sharon Morrison, Esq.
Michael Meloy, Esq.
P.O. Box 1241
Helena, MT  59624


Betty J. Nguy
Frank B. Hall & Co., Inc.
549 Pleasantville Rd.
Briarcliff Manor, NY  10610


Alan Bersin
Munger, Tollest, Rickershauser
355 S. Grand, Ste. 3500
Los Angeles, CA  90017


Martin J. Foley
911 Wilshire Blvd., Ste. 2100
Los Angeles, CA  90017


Robert Stephan, Jr.
371 East Monte Vista Way
Phoenix, AZ  85004


Wade J. Dahood, Esq.
Ray Dayton, Esq.
P.O. Box 727
Anaconda, MT  59711

Louis Forsell, Esq.
P.O. Box 184
Clancy, MT 59634-0184


David Littlefield
426 S. Fifth East
Salt Lake City, UT 84102


Donald C. Shine
Nisen & Elliott
200 W. Adams St., Ste. 2500
Chicago, IL 60606


Hugh Alexander
Columbine Place #130
216-16th St.
Denver, CO 80202


Robinson, Boese & Davidson
Box 1046
Tulsa, OK 74101


Estelle Depper
Wells Fargo Bank, NA
375 Sansome St, 10th floor, MAC 0102-103
San Francisco, CA 94163


Federal Deposit Ins. Corp.
P.O. Box 7549
Newport Beach, CA 92660

Charles Wehner, Esq.
Wehner & Perlman
11100 Santa Monica Blvd., Ste. 800
Los Angeles, CA 90025


William G. Walker
P.O. Box 8465
Albuquergue, NM 87198


Donald L. Ostrem
Attorney at Law
18 Sixth St. No.
Great Falls, MT 59401


George Link
Brobeck, Phleger & Harrison
550 S. Hope St.
Los Angeles, CA 90071-2604


Bill O'Leary, Administrator
Legal Services Div, Dept. of Labor
P.O. Box 1728
Helena, MT 59624-1728


Susan Witte, Chief Legal Counsel
State Auditor's Office
P.O. Box 4009
Helena, MT 59604


Doug Hartz, Asst. Deputy Liquidator
Glacier General Assurance
P.O. Box 4026

Missoula, MT  59806-4026


John C. Fauvre
Office of General Counsel
Bank of America Tower
555 S. Flower St., Ste. 900
Los Angeles, CA  90071-2398


Arthur J. Shartsis
Shartsis, Friese & Ginsburg
One Maritime Plaza, 18th Floor
San Francisco, CA  94111


John A. Donovan
Skadden, Arps, Slate, Meagher & Flom
34th Floor, 300 So. Grand Ave.
Los Angeles, CA  90071


Steve D. Holz
Musick, Peeler & Garrett
One Wilshire Blvd.
Los Angeles, CA  90017


Dan G. Cederberg
Attorney at Law
201 W. Main, Ste. 310
Missoula, MT  59802


Susan P. Roy
Garlington, Lohn & Robinson

P.O. Box 7909
Missoula, MT 59807


Charles E. Erdmann
Erdmann Law Office
P.O. Box 5418
Helena, MT 59604


Robert R. Throssell
Keller, Reynolds, Drake, Sternhagen & Johnson
38 So. Last Chance Gulch
Helena, MT 59601


J. Dennis Moreen and Patrick M. Driscoll
Chronister, Driscoll & Moreen
34 W. Sixth Ave., Ste. 2E
Helena, MT 59601


Robert Levinson
Grayson, Givner, Booke, Silver & Wolfe
16633 Ventura Blvd., Ste. 600
Encino, CA 91436


R.J. "Jim" Sewell, Jr.
Smith Law Firm
P.O. Box 604
Helena, MT 59624


William H. Coldiron
Gough, Shanahan, Johnson & Waterman

P.O. Box 1715
Helena, MT 59624-1715


David B. Cotner
Boone, Karlberg & Haddon
P.O. Box 9199
Missoula, MT 59807


Mike Young
Jardine, Stephenson, Blewett & Weaver
P.O. Box 2269
Great Falls, MT 59403


Michael T. Pines
5963 La Place Court, Ste. 309
Carlsbad, CA 92008


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
   Deputy