## HAWAIIAN PINEAPPLE CO., RESPONDENT, *v.* BROWNE, RECEIVER, APPELLANT.

(No. 5,318.)

(Submitted November 3, 1923. Decided December 3, 1923.)

[220 Pac. 1114.]

*Banks and Banking—Insolvency—Preferences—Trust Funds— Augmentation of Bank's Assets—Tracing Funds—Presumptions—Extent of Preference.*

Banks and Banking—Insolvency—Trust Funds—Preferences.

1. Where a draft was forwarded to a bank for collection with instructions to remit the proceeds, and the amount was collected, the relation of agent and principal and not that of debtor and creditor existed between it and the owner, and the collection and retention of the money by the bank created the relation of trustee and beneficiary, entitling the latter, upon suspension of the bank, to a preferential right to the proceeds if they augmented its assets and the owner was able to trace them into the hands of the receiver.

Same—Trust Funds—Augmentation of Bank's Assets—What Constitutes.

2. Under the circumstances mentioned above, *held* that by collecting the draft from one of its depositors who gave the bank a check to pay the amount and who had sufficient funds on deposit to meet it, retaining the cash and sending a cashier's check to the owner instead, the bank's assets were augmented.

Same—Tracing Trust Funds—Presumptions.

3. A bank which, while acting in the capacity of a trustee in collecting a draft, mingles the money of the beneficiary thus collected with its own, in disregard of instructions to remit to him, and then uses the common fund, will be presumed to have used its own money first, and the sum remaining will be deemed to belong to the beneficiary as far as necessary to make up, if possible, the full amount due him.

Same—Trust Funds—Extent of Preference.

4. Where the beneficiary of trust funds in an insolvent bank seeks a preference right to payment of his claim, his preference may not extend to an amount above the lowest balance on hand in the bank between the time it collected the draft upon which the claim was based and its enforced closing, since if in the meantime the bank's assets were reduced below the amount of the trust fund, it is conclusive that some portion of it has been dissipated and that moneys deposited by others came into the bank's possession upon which the claimant has no preference, and as to the remainder of his claim he occupies the position of a general creditor.

1. Right to preference for money paid to insolvent bank for draft, see notes in 10 L. R. A. (n. s.) 928; 39 L. R. A. (n. s.) 563.

2. Right of holder of cashier's check for preference, see note in 21 A. L. R. 681.

*Appeal from District Court, Hill County; C. D. Borton, Judge.*

ACTION by the Hawaiian Pineapple Company against Frank Browne, as receiver of the Havre National Bank of Havre. Judgment for plaintiff and defendant appeals. Remanded, with directions to modify judgment.

*Mr. Max P. Kuhr,* for Appellant, submitted an original and a supplemental brief and argued the cause orally.

Whether or not a trust relation was created, before we may speak of a "trust fund" it must first be established that there was in fact a fund created upon which a trust and preference in respondent's favor can operate, and admitting that the course of dealing between respondent and the bank was such as to establish the relation of principal and agent, rather than that of creditor and debtor, and in fact to establish a trust relation, the fact remains that under the facts in this case no fund ever came into the possession of the bank or the receiver which might be impressed with the trust. (*People* v. *Merchants & Mechanics' Bank,* 78 N. Y. 269, 34 Am. Rep. 532; 1 Bolles on Modern Law of Banking, 190; *Bradley* v. *Chesebrough,* 111 Iowa, 126, 82 N. W. 472.)

Tracing and identifying proceeds: In Michie on Banks and Banking, page 1425, the rule is stated as follows: "It would seem to be the general rule that to entitle a claimant to a priority over other creditors of an insolvent bank on the ground that he is a *cestui que trust,* and not a creditor, as to the proceeds of the papers sent by him to the bank for collection, and collected by the bank, but not remitted, he must show that such proceeds, in some form, have gone into the assets of the bank; and if he fails to do so, he must share ratably with other creditors in the distribution of the assets." (*Midland Nat. Bank* v. *Brightwell,* 148 Mo. 358, 71 Am. St. Rep. 608, 49 S. W. 994; *Bank of Florence* v. *United States Sav.*

*Bank,* 104 Ala. 297, 16 South 110; *Ober & Son Co.* v. *Cochran,*
118 Ga. 396, 98 Am. St. Rep. 118, 45 S. E. 382; *Philadelphia
Nat. Bank* v. *Dowd,* 38 Fed. 172, 2 L. R. A. 480; *Rugger* v.
*Hammond,* 95 Wash. 85, 163 Pac. 408.)

Assets of bank were not augmented: It is the well-estab-
lished rule of law, and which we believe respondent will not
controvert, that in order to give a claimant a preference the
funds of the insolvent bank must have been augmented or
increased by the payment or deposit. (Michie on Banks &
Banking, 2158.)   Where a collection is made by a bank by
charging the amount thereof to the account of a debtor, who
is a depositor in the bank, the assets of the bank are not
augmented or increased thereby, since no money passes into
the insolvent bank and claimant has no preferential claim
to the assets in the hands of the receiver.   (3 R. C. L. 639;
Michie on Banks & Banking, 1434, 2159; *Beard* v. *Independent
Dist. of Pella City,* 88 Fed. 375, 31 C. C. A. 562; *American
Can Co.* v. *Williams,* 176 Fed. 816; *Clark* v. *American Nat.
Bank,* 230 Fed. 738; *Brewing Assn.* v. *Clayton,* 56 Fed. 759,
6 C. C. A. 108; *Billingsley* v. *Pollock,* 69 Miss. 759, 30 Am. St.
Rep. 585, 13 South. 828; *Midland Nat. Bank* v. *Brightwell,*
148 Mo. 358, 71 Am. St. Rep. 608, 49 S. W. 994; *People* v.
*Merchants & Mechanics' Bank,* 78 N. Y. 269, 34 Am. Rep. 532;
*Insurance Co.* v. *Caldwell,* 59 Kan. 156, 52 Pac. 440; *Zimmerli*
v. *Northern Bank & Trust Co.,* 111 Wash. 624, 191 Pac. 788;
*Freiberg* v. *Stoddard,* 161 Pa. St. 269, 28 Atl. 1111; *Common-
wealth* v. *State Bank,* 216 Pa. St. 124, 64 Atl. 923; *Sunderlin*
v. *Mecosto County Bank,* 116 Mich. 281, 74 N. W. 478.)

The burden of proving that respondent was entitled to a
preference over the general creditors of the insolvent bank rested
upon it.   (*Merchants' etc. Bank* v. *Austin,* 48 Fed. 25; *Stilson*
v. *First Nat. Bank,* 149 Iowa, 662, 139 N. W. 70; *Nonotuck Silk
Co.* v. *Flanders,* 87 Wis. 237, 58 N. W. 383; *Guignon* v. *First
Nat. Bank,* 22 Mont. 140, 55 Pac. 1051, 1097; Michie on Banks
and Banking, 596.)

*Messrs. Norris, Hurd, Rhoades & Hauge,* for Respondent, submitted a brief; *Mr. Cleveland H. Hall,* of Counsel, argued the cause orally.

It has long been the rule in this state that where a draft is deposited with a bank for collection and remittance, and not for credit, the relation of principal and agent is established, and not that of debtor and creditor. (*Power* v. *First Nat. Bank,* 6 Mont. 251, 12 Pac. 597; *Guignon* v. *First Nat. Bank,* 22 Mont. 140, 55 Pac. 1051, 1097; *State* v. *Farmers' State Bank,* 54 Mont. 515, 172 Pac. 130; *National Life Ins. Co.* v. *Mather,* 118 Ill. App. 491; *Holder* v. *German Bank,* 136 Fed. 90, 68 C. C. A. 554; *American Can Co.* v. *Williams,* 178 Fed. 420, 101 C. C. A. 634; *Boone County Nat. Bank* v. *Latimer,* 67 Fed. 27; *Hutchinson* v. *National Bank,* 145 Ala. 196, 41 South. 143; *Windstanley* v. *Second Nat. Bank,* 13 Ind. App. 544, 41 N. E. 956; *Nurse* v. *Setterlee,* 81 Iowa, 491, 46 N. W. 1102; *Wallace* v. *Stone,* 107 Mich. 190, 65 N. W. 113; *Fire Ins. Co.* v. *Kunkle,* 60 Mo. App. 370; *National Bank* v. *Wilkinson,* 10 N. Y. St. Rep. 290; *National Bank* v. *Weems,* 69 Tex. 489, 6 S. W. 802; *Plano Mfg. Co.* v. *Auld,* 14 S. D. 512, 86 Am. St. Rep. 769, 86 N. W. 21; *Blair* v. *Hill,* 50 App. Div. 33, 63 N. Y. Supp. 670; *Merchants' Nat. Bank* v. *School Dist.,* 94 Fed. 705, 36 C. C. A. 432.)

Tracing and identifying proceeds: For a long period of time it was thought that the only method of tracing assets was by the earmark theory—that is to say, the identical property must still exist. So far as money is concerned, such theory is no longer accepted. It is now the rule that where the trust fund was constituted of money, that any money found in the hands of the trustee or assignee is deemed a part of that trust fund. Where trust funds are mingled with other funds, and money taken from such mingled funds, the residue will always be deemed to be a part of the trust funds. (*County* v. *Kuhl,* 60 N. J. Eq. 333, 46 Atl. 945; *Spokane County* v. *First Nat. Bank,* 68 Fed. 979, 16 C. C. A. 81; *Woodhouse* v.

*Crandall,* 197 Ill. 104, 64 N. E. 292; *Heidelbach* v. *National
Park Bank,* 86 App. Div. 401, 33 N. Y. Supp. 794; *Board of
Fire & Water Commrs.* v. *Wilkinson,* 119 Mich. 655, 78 N. W.
893; *Metropolitan Nat. Bank* v. *Campbell Commission Co.,* 77
Fed. 705; *Knatchbull* v. *Hallett,* L. R. 13 Ch. Div. 696; *Massey*
v. *Fisher,* 62 Fed. 958; *Merchants' Nat. Bank* v. *District,* 94
Fed. 705; *Mercantile Trust Co.* v. *St. Louis etc. R. Co.,* 99 Fed.
485; *Weiss* v. *Haight & Fries Co.,* 152 Fed. 479; *Board of
Commrs. Crawford* v. *Strown,* 157. Fed. 49, 15 L. R. A. (n. s.)
1100, 84 C. C. A. 553.)

Augmentation of assets of bank: It is elementary that a
collecting bank can only receive cash in payment of a draft,
and can only discharge its duty by remitting cash. (*Guignon*
v. *First Nat. Bank,* 22 Mont. 140, 55 Pac. 1051, 1097; *Hender-
son* v. *O'Connor,* 106 Cal. 385, 39 Pac. 786.)  In support of
respondent's contention that the assets of the bank in this
instance were augmented by the transaction in question, we
cite *State Nat. Bank* v. *First Nat. Bank,* 124 Ark. 531, 187 S. W.
673; *Goodyear Tire & Rubber Co.* v. *Hanover Nat. Bank,* 109
Kan. 772, 21 A. L. R. 677, 204 Pac. 992; *People* v. *Bank of Roches-
ter,* 96 N. Y. 32; *Kesl* v. *Hanover State Bank,* 109 Kan. 776,
204 Pac. 994; *Henderson* v. *O'Connor,* 106 Cal. 385, 39 Pac.
786; *McLeod* v. *Evans,* 66 Wis. 401, 57 Am. St. Rep. 287, 28
N. W. 173, 214.

MR. CHIEF JUSTICE CALLAWAY delivered the opinion
of the court.

The plaintiff, through the Bank of California, forwarded
for collection to the Havre National Bank, hereafter called
the Havre Bank, a draft upon the Ryan Havre Company of
Havre,  Montana, in the sum of $4,671.28, with instructions to
remit the proceeds to the First National Bank of Chicago,
hereafter called the Chicago Bank.  Five days later and on·
August 29, 1921, the Ryan Havre Company paid the draft
by a check drawn on the Havre Bank with which it then
had sufficient credit to cover the amount of the check.  On

the same day, August 29, for the purpose of paying the amount due the plaintiff the Havre Bank sent its cashier's check in the sum of $4,572.88 (being the amount due on the draft after allowing the authorized deductions) to the Chicago Bank. The Chicago Bank immediately sent the cashier's check to the Federal Reserve Bank of Minneapolis, Helena Branch, Helena, Montana, hereafter called the Helena Bank. The Helena Bank forwarded the check to the Havre Bank and it reached that bank on September 7, 1921. For the purpose of paying the check and some other cash items the Havre Bank drew a draft upon and in favor of the Helena Bank in the sum of $6,565.36; but on the same day, September 7, after banking hours, it was decided officially that the Havre Bank should be closed on account of its insolvency and it did not open for business on the morning of September 8, and has been closed ever since. On September 7 the national bank examiner in charge of the Havre Bank notified the Helena Bank by telegram of the closing of the Havre Bank. At that time the account of the Havre Bank with the Helena Bank was overdrawn to the extent of approximately $12,000. The Helena Bank, having been authorized to file with the defendant receiver plaintiff's claim for the sum of $4,572.88, included that amount with other claims it then had, and on February 20, 1922, filed with the receiver a claim amounting to $9,000, and over, for which on March 5, 1922, the receiver issued to the Helena Bank his certificate, which is still outstanding, in full force and has not been canceled.

On December 12, 1921, the plaintiff presented its duly verified claim to the receiver for the sum of $4,571.88. This the receiver disallowed, and he has ever since refused to allow it.

Nothing by way of funds or cash came into the possession of the Havre Bank or its receiver on account of the draft upon the Ryan Havre Company. The collection was handled in the usual course of business and by a transfer of credits merely on the books of the Havre Bank. The total amount of

cash on hand in the Havre Bank at the time it closed its doors and when defendant was appointed receiver was $1,801.62.

Plaintiff having begun suit against the defendant as receiver, upon an agreed statement of facts containing substantially what is above set forth the trial court rendered judgment in favor of plaintiff for the sum of $4,572.88, declared the same to be a preferred claim against the bank, directed the receiver to issue a certificate based upon the preferred claim to the full amount thereof and ordered him to pay the same in due course of administration of his trust. From this judgment the defendant has appealed.

When the Havre Bank obtained the amount of the draft [1] which it was directed to collect and remit, the relation of agent and principal, and not that of debtor and creditor, existed between it and the plaintiff. (*Guignon* v. *First Nat. Bank,* 22 Mont. 140, 55 Pac. 1051, 1097; *Spokane & Eastern Trust Co.* v. *United States Steel Products Co.* (C. C. A.), 290 Fed. 884; Michie on Banks and Banking, 1426, 1427.) As in the *Guignon Case,* the Havre Bank could only receive cash in payment of the draft, and it could only discharge its duty by remitting the cash collected to the Chicago Bank. Under the circumstances the collection and retention of the money by the Havre Bank created the relation of trustee and beneficiary between that bank and the plaintiff. (*State ex rel. Kelly* v. *Farmers' State Bank,* 54 Mont. 515, 172 Pac. 130; 7 C. J. 617.) If the collection of the draft augmented the assets of the bank, and if the plaintiff can trace the proceeds of the collection into the hands of the receiver, the plaintiff has a preferential right to these proceeds. As to this respective counsel agree. Defendant's counsel contends that by the collection [2] of the draft in the manner in which it was done the assets of the bank were not augmented; he says there was a mere shifting of credits upon the bank's books. The stipulation is that the Ryan Havre Company had sufficient credit with the Havre Bank to meet the payment of the check. This means, if it means anything, that the drawer had on deposit

with the bank sufficient funds to pay the amount of the check, and it must also mean that the bank was in funds to an amount sufficient to honor the check. Instead of transmitting the money the bank sent on its cashier's check. The person who drew it, if the bank had not sufficient funds then on hand to cover it, and he knew that fact, made himself subject to prosecution under the provisions of section 11369, Revised Codes of 1921. The court will indulge the presumption that the person who drew the check did not break the law. The presumption is the other way. (Sec. 10606, subd. 1, Rev. Codes 1921.)

Many authorities support the view that where a collection is made by a bank which charges the amount collected to the account of the debtor who is a depositor in the bank, the assets of the bank are not augmented thereby; the theory being that this merely amounts to a shifting of the bank's liability. But the theory of these cases proceeds upon the hypothesis that the relation of debtor and creditor exists between the bank and the person for whom the collection is made. As we have seen, that relation did not exist between the Havre Bank and the plaintiff. Still referring to the foregoing theory, inapplicable in this case, it is admitted that the company could have presented the check at the paying teller's window, received the amount in cash, then have paid it to the receiving teller, and this would have been an augmentation of the bank's assets. No such idle ceremony is called for. It would seem that futility could not go much further. When the bank was in duty bound to collect the cash and to remit, but instead retained the cash, when remitting would have decreased its assets, it follows that by retaining the cash its assets were augmented.

As it was the duty of the bank to collect the cash upon the draft, and as the bank had the cash with which to pay it, as a matter of law it must follow that the bank did set aside out of its cash then on hand a sum of money sufficient to pay the draft, and that sum of money is held as trustee of the

plaintiff. This conclusion we think is consistent with sound reason. (*State Nat. Bank* v. *First Nat. Bank,* 124 Ark. 531, 187 S. W. 673; *Goodyear Tire & Rubber Co.* v. *Hanover Nat. Bank,* 109 Kan. 772, 21 A. L. R. 677, 204 Pac. 992.)

With respect to tracing the fund, the law is that where a [3] trustee mingles his beneficiary's money with his own and then invades the common store he will be presumed to have used his own money first, because the law presumes that a man does right rather than wrong. The sum remaining in the hands of the trustee will be deemed the money of the beneficiary as far as necessary to make up, if possible, the full amount due him. The rule is well stated in L. R. A. 1916C (note) at page 86 as follows: "Ever since the decision in *Knatchbull* v. *Hallett* (1879), L. R. 13 Ch. Div. (Eng.) 696, 49 L. J. Ch. (n. s.) 415, 42 L. T. N. (n. s.) 421, 28 Week. Rep. 732, it has been the established rule in cases where a trustee has mingled with his own funds money held in trust, and then dipped into the common store and taken out and used a part, that, so long as a balance equal to the trust fund remains, it will be presumed that the money drawn out and used was the trustee's own money, and that the money left undrawn was the trust money. In cases where it has appeared that the balance left in the mingled store was less than the sum of money held in trust, the courts generally have presumed that the drawings out by the trustee began upon his own funds, and continued until they were exhausted, before he intrenched upon the trust money, and therefore, that whatever balance remained belonged wholly to the trust."

In his well-written brief counsel for defendant says, correctly, that conceding the foregoing statement to be [4] true the preference may not extend above the amount of the lowest balance on hand in the collecting bank between the time of making the collection and its enforced closing; this on the theory that if the amount of cash in the bank at one time during the interval has reached a low figure and later a higher one, it is conclusive that some of the trust funds have

been dissipated and funds deposited by others have come into the bank's possession, upon which the beneficiary may have no preference. (*Covey* v. *Cannon,* 104 Ark. 550, 149 S. W. 514.)  So far as we are apprised by the record, the sum of $1,801.62 was the lowest amount of cash in the bank at any time after the collection was made.  If the contrary is true the facts were in the receiver's possession; but he did not disclose them.

In one respect the court erred.  It should have given plaintiff a preferential right to the $1,801.62 only.  As to the remainder of its claim it is a general creditor.

The cause is remanded to the district court, with directions to modify its judgment accordingly; each party to pay its or his own costs on this appeal.

*Modified.*

ASSOCIATE JUSTICES COOPER, HOLLOWAY, GALEN and STARK concur.

Rehearing denied December 17, 1923.