Submitted at Pendleton on motion to dismiss appeal September 18; motion denied October 2, 1928; argued on the merits, May 9; affirmed October 8; rehearing denied December 17, 1929

# CLARENCE A. LANE *v.* FIRST NATIONAL BANK
## OF VALE ET AL.
(270 Pac. 476, 281 Pac. 172, 283 Pac. 17)

For the motion *Messrs. Nichols, Hallock & Donald.*
Contra, *Mr. C. M. Crandall.*

RAND, C. J. ■ This cause is now here on a motion
for an order dismissing the appeal. The transcript
on appeal was filed in this court on June 21, 1928, and,
under the rules, the defendants, as appellants, had
20 days thereafter in which to file their printed
abstract and 20 days subsequent to the filing of the
printed abstract in which to file appellants' brief.
Instead of making application to this court for an
order extending the time for filing said abstract and

briefs, applications were erroneously made to and granted by the trial judge and they were later filed here within the time extended by the trial judge.

It is obvious that the applications and extensions were made under a misapprehension of the meaning of § 554, O. L., which provides that under its provisions the time for filing "a transcript or such an abstract as the law or the rules of the appellate court may require, etc.," may be extended "by the trial court or the judge thereof, or the supreme court or a justice thereof," and, if filed within the time allowed, this court acquires jurisdiction of the cause and thereafter alone has authority to extend the time for filing printed abstracts and briefs.

The record shows that appellants at all times exercised reasonable diligence and acted in entire good faith although mistakenly and would not have been in default if the trial court had had authority to make the orders. We think, therefore, that, in the interests of justice, the motion to dismiss the appeal should be denied and it is so ordered, respondent to have 20 days in which to file his opposing brief.

MOTION TO DISMISS APPEAL DENIED.

This is a suit brought by the plaintiff Clarence A. Lane to have certain alleged funds in the hands of H. D. Jackson, as receiver of the First National Bank of Vale, impressed with a trust in his favor. Plaintiff had decree and defendant appeals.     AFFIRMED.

The circumstances as detailed in the complaint, paragraphs 1, 2, 3, and 4, are formal.

Paragraph 1 alleges that the First National Bank of Vale is a defunct banking corporation and that Ray T. Moe is the liquidating agent. This is admitted.

Paragraph 2 alleges, and it is admitted, that the Equitable Trust company is a corporation engaged in

general banking and trust business in Wilmington, Delaware.

Paragraph 3 alleges, and it is admitted, that plaintiff is a nonresident of the state.

Paragraph 4 alleges that at all the times and dates prior to October 24, 1924, the First National Bank of Vale was engaged in the general banking business, and that on the said last named date it became insolvent, failed and closed its doors, and its business affairs were placed in the hands of Ray T. Moe as receiver and liquidating agent. All this is admitted, except it is alleged in the answer that Jackson has been substituted as receiver instead of Moe as appears by the present title of the cause.

Paragraph 5 alleges that on July 20, 1921, the Equitable Trust company acting for and on behalf of plaintiff transmitted to the defendant bank a promissory note in the principal sum of $2,500, which said note was dated at Vale, Oregon, May 6, 1921, payable to the order of plaintiff on or before January 15, 1922, with interest at 8 per cent per annum, with reasonable attorney's fees in case of suit. The note was signed by Arden A. Reed and Clara McN. Reed, was duly endorsed by plaintiff, and also on July 30, 1921, endorsed by the Equitable Trust company with directions to pay to the order of the First National Bank of Vale, Oregon, under which said endorsement so made by the trust company the said endorsement of plaintiff Clarence A. Lane was guaranteed and the trust company when so transmitting the note to defendant bank advised the said bank in writing that said note was sent to it for collection. To this paragraph the defendant answered admitting it to be true with the explanation, however, that the said note was secured by a duly recorded mortgage.

Paragraph 6 of the complaint, from its importance here, we give in full. It is as follows:

"That on and prior to the 21st day of October, 1921, Arden A. Reed, one of the makers and signers of said note had on deposit to his credit with said First National Bank a sum of money in excess of $2,591.68 and that on said last named date the said Arden A. Reed did pay to said First National bank for the account of plaintiff the full amount of principal and interest on said note in the total sum of $2,591.68 and did accomplish said payment by making, executing and delivering to said First National bank a check payable to the order of said bank, in said last named sum, whereupon, and on said 21st day of October, 1921, the said First National bank did charge said sum of $2,591.68 to the account of said Reed on its books, did stamp said check 'Paid' and did subsequently return the same to said Reed with other checks drawn by said Reed and paid out of his said account with said bank, and that said bank did thereupon on said date prepare a demand certificate of deposit in the said sum of $2,591.68 and did make the same payable to the order of said First National bank for the account of plaintiff, but that said bank instead of remitting said amount so collected by it from said Reed for the account of plaintiff either direct to plaintiff or to his said agent, Equitable Trust company did hold said certificate of deposit and said fund so paid to it by said Reed, and in so doing did constitute itself and did thereupon become a bailee and trustee of said fund for plaintiff."

To this paragraph defendants answered as follows:

"That as to the allegations and averments contained in paragraph '6' of said complaint, these answering defendants admit, deny, qualify and explain as follows, to wit:

"These answering defendants admit. 'That on and prior to the 21st day of October, 1921, Arden A. Reed,

one of the makers and signers of said note, had on deposit to his credit with said First National bank a sum of money in excess of $2,591.68,' but allege and aver that on said October 21st, A. D., 1921, the said Arden A. Reed, did have on deposit as a checking account in said bank, a sum in excess of $2,591.68, and on said date, the said Arden A. Reed, did duly draw and make his checks in usual form, against said checking account and delivered the same to the said The First National Bank of Vale, Oregon, said check being payable to the order of said The First National Bank of Vale, Oregon, and for the sum of $2,591.68, and said check was for the amount then due and owing on the indebtedness as evidenced by said note and mortgage, and was delivered to the said The First National Bank of Vale, for the purpose of paying and discharing such indebtedness but that the said Arden A. Reed, demanded and requested that before the said The First National Bank of Vale, remitted the amount of said check for said indebtedness that the said bank secure and deliver to him a satisfaction piece discharging said mortgage of record, the said bank not having any such satisfaction piece in its possession, and that the said bank did charge the said amount of $2,591.68, to the account of said Arden A. Reed on its books, did stamp said check 'Paid,' and did subsequently return the same to said Reed with other checks drawn by said Reed upon his said account, and that said bank did, on said October 21st, A. D., 1921, for the purpose of keeping the account of said bank, in the matter of the handling and holding of said sum of $2,591.68, make a certificate of deposit in usual form, in the said sum of $2,591.68, of the following tenor, to wit:

"First National Bank
"No. 1097            Vale, Oregon, Oct. 21, 1921.

Arden A. Reed has deposited in this bank, twenty-five hundred ninety-one dollars sixty-eight cents ($2,591.68) payable to the order of First

Nat. Bank of Vale, in escrow for C. A. Lane, on the return of this certificate properly endorsed. Not subject to check.          A. W. Reed, Cashier.

"That on said October 21st, A. D., 1921, the said The First National Bank of Vale, being without said satisfaction piece, was unable to deliver the same to the said Arden A. Reed, did retain and hold said funds under said method of bookkeeping awaiting the arrival and receipt of said satisfaction piece from the holder and owner of said note and mortgage, which the said bank had, prior thereto, requested the said holder and owner of said note and mortgage to execute and deliver to said bank for its delivery to the said Arden A. Reed, but which satisfaction was not received by said bank until after October 24th, A. D., 1921, the date of the closing of the said First National Bank of Vale, Oregon.

"That the assets of said The First National Bank of Vale, were not augmented or increased by said transaction.

"That as to each and every other allegation in said paragraph '6' of said complaint contained, these answering defendants deny the same, and allege that it was the intention, desire and purpose, so expressed by the said Arden A. Reed, and understood and agreed by the officers of said bank, that the said bank was not to remit or part with the control and custody of the amount as evidenced by said certificate of deposit until such time as it had received and delivered to the said Arden A. Reed, the said note and ,mortgage together with the satisfaction of said mortgage."

Paragraph 7 of the complaint is as follows:

"That on the 21st day of October, 1921, when said defendant bank made said collection from said Reed, as aforesaid, it, the said First National Bank of Vale, Oregon, was insolvent and that at said time it, the said First National bank, and its officers knew of the insolvent condition of said bank; that at said time the said Equitable Trust company was in a sound and solvent condition and that said First National bank,

instead of remitting the said fund so collected by it from said Reed to plaintiff or to his agent, Equitable Trust company, and at said time, knowing of the insolvent condition of the said First National bank, the said First National bank did fail and refuse to remit said fund or any part thereof to plaintiff or to his said agent, the Equitable Trust company, but did hold and retain said fund until the said First National bank failed and closed its doors and was placed in the charge of said receiver on the 24th day of October, 1921, as aforesaid.''

The defendants' answer substantially denied this paragraph.

Paragraph 8 of the complaint is as follows:

''That at the time of the payment of said note by said Reed and at the date when said First National bank failed and closed its doors the said bank had in its possession the said sum of $2,591.68 or had in its possession valid claims, accounts receivable, demands, dues and credits from solvent persons and corporations amply sufficient to have enabled the said defendant, First National bank, to have remitted said fund ·so collected by it to plaintiff or to his agent, the said Equitable Trust company, and that the said Ray T. Moe, as receiver of said bank, now has in his possession moneys and dues, credits, claims and demands against solvent corporations and individuals to an extent amply sufficient to enable the said receiver to pay over and remit said fund with interest from the date of said collection to plaintiff.''

The defendants answered denying the allegations of paragraph 8, and alleged that at the time of closing its doors on October 24, 1921, there was in the bank only $1,118.70, and that there was no other sum that came into the hands of the receiver.

Paragraph 9 alleges the repeated demand on behalf of plaintiff for the amount collected from Arden A. Reed and the refusal of defendants to comply with such request. This paragraph is admitted.

Paragraph 10 alleges that plaintiff has no adequate remedy at law and prays that a trust be impressed upon the assets of the bank in the hands of the receiver to be applied on his claim, and that the receiver be adjudged a trustee for plaintiff and be restrained from so disposing of the assets as to diminish them to the prejudice of plaintiff.

The defensive matter in the answer being put at issue by an appropriate reply, the court, after hearing the testimony, found generally along the line of plaintiff's complaint, rendered a decree in his favor accordingly and from which decree defendant appeals.

AFFIRMED. REHEARING DENIED.

For appellants there was a brief and oral argument by *Mr. C. M. Crandall.*

For respondents there was a brief over the name of *Messrs. Nichols, Hallock & Donald* with an oral argument by *Mr. James T. Donald.*

McBRIDE, J. To enter into a detailed discussion of the testimony in this case, would require more space in the reports than it is practicable to give to the subject, so we will simply state our own findings as to the facts, which do not differ materially from those of the learned and lamented jurist who tried this case below and who, to the grief of his community and to the loss of the profession which he adorned, passed to the Great Beyond.

Arden A. Reed on May 6, 1921, and for several years prior thereto, was a resident of Malheur county, and was a depositor and customer of the First National Bank of Vale of which bank one A. W. Reed was cashier and manager. Before and up to May 6, he had, through correspondence, negotiated for the purchase of a tract of land in Malheur county from the

plaintiff Clarence A. Lane, an old friend residing in the state of Delaware. The negotiations terminated in a purchase by the terms of which Arden A. Reed paid about $3,000 in cash and for $2,500 the balance due executed a promissory note on May 6, 1921, due January 15, 1922, which note was signed by himself and wife and secured by a mortgage upon the property which was conveyed to Arden A. Reed at the time of the purchase.

In the financial part of the transaction the Equitable Trust company, a banking institution of Wilmington, Delaware, acted for Mr. Lane through the defendant bank and the money and securities, United States bonds, treated as money, were delivered to the defendant bank to be forwarded to the Equitable Trust company and were so forwarded by it, the money being represented by a cashier's check. The note and mortgage were also forwarded at the same time. In a letter forwarding the document, the bank acting through its cashier, A. W. Reed, stated:

"As this note and mortgage is payable at this bank on or before January 15, 1922, *I would suggest that it be sent here for collection.*"

The Equitable Trust company in acknowledgment of the receipt of the document stated: "As soon as we can get the note endorsed, we will forward it to you *for collection.*" Thereafter, on June 20, 1921, the defendant bank wrote to the Equitable Trust company as follows:

"With reference to power of attorney to satisfy this note, Mr. Reed will notify me a short time before he intends to take up this note and at that time I will forward you a release for same to be held in escrow until the mortgage is paid. This will be slightly more economical than drawing a power of attorney, recording the same and also recording the release."

360

·· It seems to be clear to us that the bank not only assumed the duty of collecting this money and remitting it, and of delivering the release of the mortgage when it should be forwarded, but actually requested the business. No relation of banker and depositor was contemplated. Lane away in Delaware had no intention of being a depositor or creditor of the defendant bank. He was already a creditor of Arden A. Reed, and a well-secured creditor at that, and there was no reason for him to seek a new debtor. He trusted the defendant bank and its cashier to the extent of collecting this money and remitting it to him. Had they converted it to their own use they would have been guilty, under our statute, of the offense of embezzlement. Clearly, the bank's relation to the plaintiff was that of a trustee.

■ Now let us see what next happened. On October 21, 1921, Arden A. Reed called at the defendant bank to pay the note. He had to his credit on the books of the bank the sum of $5,503.84. The note then amounted, with accumulated interest, to the sum of $2,591.68. He drew his check in favor of the bank for that sum, upon the face of the check writing the words "payment in full, C. A. Lane mortgage". Albert W. Reed, cashier, accepted the check, charged the same against Arden A. Reed's checking account, entered the item as a withdrawal on the bank's statement later furnished to Arden A. Reed and later returned the check to Arden A. Reed with other checks stamped across the face "paid 10-22-21." Contemporaneously with the giving and acceptance of the check, the release of the mortgage not having yet arrived, Albert W. Reed, the cashier drew up a certificate of deposit in favor of the bank, which is as follows:

"First National Bank.

"Vale, Oregon, Oct. 21, 1921, No. 1097.

"Arden A. Reed has deposited in this bank twenty-five hundred ninety-one dollars sixty-eight cents ($2,591.68), payable to the order of First Nat. Bank of Vale in escrow for C. A. Lane on the return of this certificate properly endorsed.

"Albert W. Reed, Cashier.

"Not subject to check."

Here was a setting apart of the particular funds created by the check of Arden A. Reed for a particular purpose, namely, to deliver such moneys to Lane upon the arrival of the release, which both the drawer of the check and the cashier knew, or at least confidently expected, would soon arrive. It was the advice of plaintiff's agent. It constituted, first, evidence of a payment to Lane's agent, and, second, an implied admission by the agent that a satisfactory payment had been made. So far as the kind of money was concerned, whether we treat it as an escrow proper or not, it indicates a setting apart by the bank of that particular deposit for the benefit of Lane. In effect, it said: "We hold this sum in trust for Lane to be delivered over to him when the release shall arrive." Whether or not Arden A. Reed requested this arrangement or demanded it, is in our view immaterial. Albert W. Reed, the cashier, says now that he made the arrangement at Arden A. Reed's request and Arden A. Reed testified that no such request was made. We are inclined to believe Arden A. Reed's testimony in opposition to that of Albert W. Reed. In a trial in another case, in which this matter was more or less involved, he testified as follows::

"Mr. Reed made no demand, but did make inquiry as to how he could be protected on this payment and,

as stated above, the course adopted was at my suggestion with the view in mind that both the maker of the note would be protected in his payment and the owner of the same would be protected in issuing a satisfaction of mortgage.''

In his deposition in the present case he mends his hold as follows: "Mr. Arden A. Reed called at the bank and demanded a satisfaction of mortgage to be delivered with the note.'' In addition to this, in his deposition in this case he constantly shows a disposition to suppress facts which might be inimical to defendant bank, and to many of the questions propounded on cross-examination, if not to most of them, he made this stereotyped answer: "I fail to see where the above question is material and decline to answer the same.'' Many of the questions were material and there were none which an honest fair-minded witness should have declined to answer. To the writer it appears that there was something rotten in his conduct of the bank, which failed with only a very small dividend for its depositors, and which circumstance induced him to attempt to cover up its transactions. He is not a credible witness. When the deposition in this case was taken, he was in another state where it would have been difficult, if not impossible, to have compelled him to answer, so the plaintiff was compelled to let him exercise his own discretion in refusing to answer questions.

The relation of a bank to persons, not depositors, who send demands or notes for the purpose of collection, is far from being well settled. This diversity of opinion is referred to by counsel for appellants in the following language:

"In this but cursory investigation of counsel for the respondents that has been made, there are con-

flicts of the law applicable thereto, between the judiciary of the several states, and even the decisions of the federal courts are not uniform in their holdings, also, there appears contradictory holdings of the courts of the same state. Still more to be regretted is the diversity of the courses of reasoning adopted and set forth in order to bring about that which should be termed equity of justice, and the mystification that results when attempting to apply the rules as laid down by the courts as controlling.''

We could not collate the various contradictions in the decisions on this subject with more effect than they are stated in the reply brief of appellants, but the necessity of economizing space forbids further quotation.

Where the collection is made for a depositor of the collecting bank, and where there are no specific instructions as to the disposition of the money and no fraud in inducing the collection, the weight of authority is that, if the bank places the money to his credit in the bank, no trust arises. Among the multitude of reasons for this holding, perhaps the most obvious one is that the general, and we might say immemorial, custom of banks, when making a collection for a depositor is, in the absence of specific directions to the contrary, to deposit the amount collected for him to the credit of his account. Such is the natural and obvious course to be pursued. In most cases depositors, having general accounts with a bank, are presumed to have some knowledge of its standing, and are also presumed to deal with it in reference to the usual custom of banks in matters of this kind; but this is as far as the authorities seem to agree and there is ample room for discussion and divergence of judicial decision upon cases where a stranger, not a depositor, has a single isolated transaction, which he

intrusts to a strange bank to carry out for him. So we find decisions putting him in the same category with a depositor as a mere creditor of the collecting bank, other courts, equally able, holding that the bank is a trustee for his benefit to the amount of the collection that can be traced to the funds of the bank; and still others holding that the very fact of the collection and failure to remit as requested makes the bank a trustee. Many fine distinctions are made which it would not be profitable to discuss. While the testimony is conflicting, for reasons already stated, we are disposed to accept the statement of Arden A. Reed, that the so-called escrow agreement and the holding up of the money was a gratuitous act on the part of the bank's cashier. Whether it was intended by him as a precaution to insure the delivery of the release, or as a pretext for not at once forwarding the money of which his bank, even then tottering to its fall, needed in its business, is not material. Neither Arden A. Reed nor the cashier had any serious reason to doubt that the release would follow the payment of the money, knowing that the fact of payment could be so easily established and the penalty for not promptly executing the release so drastic that it would be improbable to the last degree that the release would not be forwarded. The bank was plaintiff's trustee to do these things; to collect the note from Arden A. Reed; to remit to the plaintiff through his bank, and to see that the release of the mortgage was properly delivered when it arrived. Instead of doing this, it collected the money by a way satisfactory to itself, made a show by setting apart and making and holding a certificate of deposit for the amount and converting the payment to its own use.

When we speak of trusts, it is just as well once in awhile to go back to basic definitions instead of refined and technical decisions. The great chancellor Kent in *Kane v. Bloodgood,* 7 Johnson's Chancery (11 Am. Dec. 417, 421), has given a clear definition, which remains "like the shadow of a great rock in a weary land." He said:

"Every person who received money to be paid to another, or to be applied to a particular purpose to which he does not apply it, is a trustee, and may be sued either at law for money had and received, or in equity, as a trustee, for a breach of trust."

This definition, committed to memory by the writer 60 years ago, he has found sufficient in a general way to answer through all the changes of the law from the time it was uttered until the present.

■ In any view of the testimony, the bank was a trustee for Lane. The real question is, whether or not there was such a trust as was enforcible as against the right of depositors to participate in the fund. This we shall presently discuss, but, before doing so, we will advert to another ground urged by plaintiff for a recovery in this case in which it is urged, that at the time Arden A. Reed paid the note, and for a considerable time before that date, the bank was, to the knowledge of its officers, hopelessly insolvent, and that, by assuming to receive payment on the note and retaining the proceeds of the collection, a fraud was committed on the plaintiff, which results in a trust in his favor for the amount of the payment. If the facts show the premise to be true, the result claimed by plaintiff naturally follows.

Without citing the many authorities in detail, or consuming space in quotations, the following cases settle the proposition in plaintiff's favor: *St. Louis*

& San Francisco Ry. Co. v. Johnston, 133 U. S. 566, 576, and Western German Bank v. Norvell, 134 Fed. 724.

■ The note was paid on October 21, 1925, and on the 24th the bank closed its doors and ceased to do business. The exhibits on file do not show the deposits and withdrawals from any period earlier than the 18th of October, 1925, but show that on the 19th of October the withdrawals in excess of deposits amounted to $1,470.33, on the 20th, $3,408,68, on the 21st, $2,221.18, on the 22d $3,674.70, on the 24th, the day that the bank closed, $1,566.66, the 23d being Sunday no business was transacted, and at the time the bank closed on the 24th, it had actually in its vaults only $1,118.70, and cash balances in other banks amounting to $7,676.90, the result indicating rapid and continued withdrawals during the time indicated of about $12,000 in excess of deposits.

The final upshot of the matter, as disclosed by the listing of the receiver and others, is this: When the bank closed, its total alleged assets, good or bad, amounted to $494,081.56, and its admitted liabilities to $171,143.82. Of the assets, $269,356.89, presumably the best, has been liquidated and has resulted in a dividend to creditors of 5 per cent. So if a liquidation of the above amount of alleged assets produced only 5 per cent of dividends, it is safe to predict that a liquidation of the balance will probably result in a smaller dividend. We are, therefore, justified in assuming that this whole array of imposing assets was not actually worth $30,000 and that, with the constant excess of withdrawals over deposits, the officers of the bank, and especially the cashier, must have known of the practical worthlessness of these assets; must have been aware that the bank was hopelessly

insolvent long before the transaction between Arden A. Reed and Lane, and to take the money under such circumstances was a gross fraud, and to keep it another fraud.

■ From the time they accepted the check until and including the time the bank closed its doors, there was enough money in its vaults, or in cash balance in other banks, to have covered the amount due Lane, and cash balances in other banks are for the purpose of this case the same as if the money had been in the vaults of the bank. There is no rule of law that requires a bank to keep all its money in its own safe. In fact, few banks in country towns do so, but from motive of safety or convenience prefer to have it kept in the vaults of the banks of larger commercial centers. It could call in its balances and keep its moneys in the unused hose of the president or the cashier, or bury them, if it saw fit, but for the purposes of this or any like case these balances should be treated as in its possession and were available for a basis of a draft in favor of Lane. But it is said that the fact that the payment by Arden A. Reed was by check defeats the trust; that such payment did not ''swell the assets of the bank'' as a payment as cash would have done. The phrase, ''swell the assets of the bank,'' is a glib phrase, which is frequently parroted down from one court to the other, but has no application here. The bank was not acting primarily for him but for Lane for whom it was collecting the money. It took Reed's check as money and thereby diminished its debt to Reed by just that much. It was a good check and answered the bank's purpose and Reed's purpose just as well as that many actual dollars would have done. Suppose that instead of crediting Reed's note with the amount of the check the

cashier had said, "Mr. Reed, we must have actual cash in payment of this note, just step to the paying teller's window and cash your check," and Reed had done this and at once returned to the cashier's window and paid the money on the note, every condition required by those decisions which put so much significance to the phrase "swell the assets" would have been complied with and yet the result would have been the same.

The same contention was made in the case of *Hawaiian Pineapple Co. v. Brown,* 60 Mont. 140 (220 P. 114), which in some of its features resembles the case at bar. The court said:

"Many authorities support the view that where a collection is made by a bank which charges the amount collected to the account of the debtor who is a depositor in the bank, the assets of the bank are not augmented thereby; the theory being that this merely amounts to a shifting of the bank's liability. But the theory of these cases proceeds upon the hypothesis that the relation of debtor and creditor exists between the bank and the person for whom the collection is made. As we have seen, that relation did not exist between the Havre bank and the plaintiff. Still referring to the foregoing theory, inapplicable in this case, it is admitted that the company could have presented the check at the paying teller's window, received the amount in cash, then have paid it to the receiving teller, and this would have been an augmentation of the bank's assets. No such idle ceremony is called for. It would seem that futility could not go much further. When the bank was in duty bound to collect the cash and to remit, but instead retained the cash, when remitting would have decreased its assets, it follows that by retaining the cash its assets were augmented."

Some other contentions are made, but we feel that we have covered the substantial points urged. The case has been more than usually well briefed, and

although the consideration of it has consumed several weeks of the writer's time it has been a pleasurable task. Every case cited has been read and considered, and, while there is great diversity of opinion among the courts, we agree with the conclusion of the learned circuit judge, and the decree will be affirmed.

AFFIRMED.

RAND, ROSSMAN and BEAN, JJ., concur.

---

Rehearing denied December 17, 1929

ON PETITION FOR REHEARING
(283 Pac. 17)

For appellants, *Mr. C. M. Crandall.*

For respondents, *Messrs. Nichols, Hallock & Donald.*

McBRIDE, J. ■ ■ Counsel for the defendant has presented a petition for rehearing in which he maintains, with his usual vigor and ability, that our previous decision is erroneous in several particulars. Every question presented in the petition was carefully gone over in the original opinion, and we do not find anything which induces us to alter our position on the main question. There is, however, one matter in which we think that the lower court was mistaken, and in which we erred in not more thoroughly considering, and that is the question of interest on the demand. The court allowed a decree against the defendant for $2,591.68, with interest at the rate of 8 per cent per annum from October 21, 1921. Under the circumstances in this case, we do not consider this allowance equitable. It is seldom, in a suit in equity, that interest is allowed as penalty. In this case the record discloses that, as soon as the claim was demanded from the receiver, he communicated with the

comptroller of the currency, and that several letters passed, with the result that the comptroller directed the receiver not to allow or pay this claim as preference. In a close case of this kind, we think it would not have been advisable for the receiver to have allowed and paid this claim as a preference, taking into consideration the somewhat confused state of the law, without a formal adjudication of the court requiring him to do so, and in fairness to other creditors the funds of the bank should not be depleted by allowing the interest charge imposed my the court below. In this respect the case of *Richardson v. Louisville Banking Company*, 94 Fed. 442, 449, seems in point, and we quote the following:

"The decree of the court below allows interest against the receiver from judicial demand. We are of opinion that this was erroneous. The funds collected, coming into the hands of the receiver, turned over to the comptroller, could not earn interest, and any interest to be paid thereon would be necessarily taken from some other trust fund. The involved circumstances surrounding the case made it improper, if not impossible, for the receiver to pay over the amount for which he is charged as trustee without an investigation and an accounting; and we think he was in no fault, but rather in the fulfillment of his official duties, in refusing to recognize complainant's demands until they were judicially determined. As a general rule in equity, trustees are not required to pay interest unless they are in fault in the management of the trust fund, or have so used the trust fund as to earn interest."

Our former decision and the decree of the lower court will therefore be modified so as not to include the amount allowed as interest. In all other respects the decree of the lower court is affirmed and the petition for a rehearing denied. REHEARING DENIED.