### CITY OF MIAMI v. FIRST NAT. BANK OF ST. PETERSBURG, FLA., et al.*

No. 6287.

Circuit Court of Appeals, Fifth Circuit.

April 16, 1932.

C. I. Carey, of St. Petersburg, Fla., for appellant.

K. I. McKay, of Tampa, Fla., and Arthur R. Thompson and Dean Aikin, both of St. Petersburg, Fla., for appellees.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

The city of Miami brought its bill alleging: That on June 4, 1930, it deposited in the First National Bank of Miami for collection a check for $5,000, payable to its order, drawn by the County Finance Corporation on the First National Bank of St. Petersburg. That it was indorsed by the Miami bank for collection, and sent in accordance with the usual and regular course of banking business to the First National Bank of Tampa, Fla., which in the same regular course of banking business sent it to the St. Petersburg bank for collection and remittance. That the St. Petersburg bank, on the 7th of June, presented the check to itself for payment and remittance. That it then, having on deposit to the credit of the drawer sufficient funds to pay the check, did pay it and mark the check paid, and in due course did deliver it to the drawer. That in remitting the sum of $5,000 the St. Petersburg bank issued its draft, and sent it to the Tampa bank. Before the draft was paid, and before the city had received the $5,000 which, as its agent to collect and remit, the St. Petersburg bank had collected and was holding for it, and, while it was still in its possession, that bank failed and discontinued business, and was placed in the hands of a receiver, and the $5,000 thus collected and held by it for the city is still in the possession of the bank and its receiver. That on June 7, when the check was presented for payment and paid, the St. Petersburg bank had sufficient funds in its possession available to pay the check and at all times until it closed its business, and at the time it closed

there was, and there still is, in its possession, and in the possession of the receiver, cash in excess of the amount of complainant's check.

It further alleged that by reason of these facts the moneys in the hands of the bank and the receiver became impressed with a trust in plaintiff's favor, and that to satisfy the same the plaintiff has a preferred claim. It prayed in effect that the First National Bank and the receiver be declared to hold in trust for it the said sum, and that it have an order awarding it preferential payment of its claim. The bill was dismissed, upon motion, for want of equity. This appeal followed.

Appellant relies upon the generally recognized principle that liens, equities, or rights resting in express agreements, or implied from dealings between the parties, or raised by operation of law prior to the insolvency of a national bank, are not affected by that insolvency, Scott v. Armstrong, 146 U. S. 499, 13 S. Ct. 148, 36 L. Ed. 1059; that, where the failed bank holds money in trust, that money does not pass to the receiver as a part of its assets, Davis v. Elmira Sav. Bank, 161 U. S. 275, 16 S. Ct. 502, 40 L. Ed. 700; that, in short, the receiver administers only the assets to which the bank held title. It declares that the facts alleged, showing that the St. Petersburg bank was its agent to collect for and remit to it the amount of the check, establish that the bank after collection held these funds for it as its funds under a trust to pay them over; that, as the bank had no title to them, the receiver got none.

It is held generally that a bank receiving items for collection and remittance is, before collection, the agent of the sender or the owner of the item, according to whether the New York or the Massachusetts rule applies. Marine Bank v. Fulton County Bank, 2 Wall. (69 U. S.) 252, 17 L. Ed. 785; Commercial Bank v. Armstrong, 148 U. S. 50, 13 S. Ct. 533, 37 L. Ed. 363. In these cases it was said that this relation of principal and agent continues after collection as to funds collected, with the consequent duty of holding them for, and sending them to, the principal, unless there is an agreement as there was in those cases, express or implied, as to the funds after collection, raising the relation of debtor and creditor.

It is also the rule in those jurisdictions where the Massachusetts rule prevails that banks receiving items for collection may select other banks to act as subagents for the owner of the item, and that these banks so selected, in the absence of other agreement, represented, not the forwarder, but the owner of the item. This is the rule in Florida by statute. Federal Reserve Bank v. Malloy, 264 U. S. 160, 44 S. Ct. 296, 68 L. Ed. 617, 31 A. L. R. 1261; Atlantic Nat. Bank v. Pratt, 95 Fla. 822, 116 So. 635; Edwards v. Lewis, 98 Fla. 956, 124 So. 746; Myers v. Federal Reserve Bank (Fla.) 134 So. 600. The St. Petersburg bank, then, in receiving and collecting the item, was the agent of the city of Miami, and, unless the facts show, or the law implies, an agreement that after collection it ceased to be agent of, and became debtor to, the city, it held the $5,000 collected for it, impressed with a trust which it could not discharge except by delivering the money to its principal; for, simply stated, "every person who receives money to be paid to another, or to be applied to a particular purpose to which he does not apply it, is a trustee, and may be sued either at law for money had and received, or in equity, as a trustee, for a breach of trust." Kane v. Bloodgood, 7 Johns. Ch. (N. Y.) 90, 11 Am. Dec. 421; Lane v. First National Bank,, 131 Or. 350, 270 P. 476, 281 P. 172, 177, 283 P. 17.

We recognized and gave application to this general principle in Early & Daniel Co. v. Pearson, 36 F.(2d) 732; Davis v. McNair, 48 F.(2d) 494; Dixon v. Hopkins, 56 F.(2d) 783; Fagan v. Whiddon, 57 F.(2d) 631. The Fourth Circuit did the same in Schumacher v. Harriett (C. C. A.) 52 F.(2d) 817, 818, and Schumacher v. Brinson (C. C. A.) 52 F.(2d) 821, while the Supreme Court of Florida laid down and applied the same rule in Bryan v. Coconut Grove Bank & Trust Co., 132 So. 481; Newsom v. Acacia Mut. Life Ass'n, 136 So. 392; City Bank of Ft. Lauderdale v. Hart, 136 So. 446. Most of these cases presented no tracing difficulty under the modern rule.[1] This one presents none. The bill alleges the continued existence of a fund; that the St. Petersburg bank had collected and was holding the $5,000 in trust for plaintiff; that this sum was in its possession so held when it failed, and that the receiver took the bank's money charged with a trust for its payment. Upon the allegations of the bill, the funds were directly traced into the receiver's hands. Dixon v. Hopkins (C. C. A.) 56 F.(2d) 783. The only question here is whether the application of the

---

[1] For interesting articles discussing tracing, and the general questions here considered, see "Bank Collections—The Direct Routing Practice, Roscoe B. Turner, Yale Law Journal, vol. 39, p. 468; Constructive Trusts and Bank Collections,—Wayne L. Townsend, Yale Law Journal, May issue, 1930."

principles discussed in the cases cited above entitled plaintiff to a decree.

It is contended on the part of appellee that, though the Florida courts and many state courts do accord preferential treatment to one situated as plaintiff is, the rule is otherwise established in the federal courts, that it is there held that, unless there is augmentation of the funds of the collecting bank in the sense that some new money comes into it from outside as the result of the collection, no trust arises, and that, since here the draft was on the collecting bank itself, no new money could have come in. Appellee cites cases from other circuits in support of this view. Mechanics & Metals Nat. Bank v. Buchanan (C. C. A.) 12 F.(2d) 891; Larabee Flour Mills v. First National Bank (C. C. A.) 13 F.(2d) 330; Rorebeck v. Benedict (C. C. A.) 26 F.(2d) 440; Ellerbe v. Studebaker Corp. (C. C. A.) 21 F.(2d) 993. It cites our case, Anheuser-Busch v. Clayton, 56 F. 759, 760, as applying this doctrine to collections made by the drawee bank.

In Davis v. McNair, supra, the fallacy of the claim that to support a trust there must be augmentation in the sense of new money brought into the bank from outside, where the relation of the bank toward money which it had theretofore held on general deposit was changed from that of owner to that of agent or trustee, was exposed. It was there shown that there is true augmentation of the assets of a bank in the hands of a receiver through the action of the bank in mingling with its own funds moneys which it does not own. The Florida courts, Atlantic Nat. Bank v. Pratt, 95 Fla. 822, 116 So. 635, 636, Edwards v. Lewis, 98 Fla. 956, 124 So. 746, 747, and Myers v. Federal Reserve Bank of Atlanta (Fla.) 134 So. 604, and cases supra treat the matter in the same way. Other cases interestingly presenting the same view are Lane v. First Nat. Bank, 131 Or. 350, 270 P. 476, 281 P. 172, 177, 283 P. 17; Hawaiian Pineapple Co. v. Browne, 69 Mont. 140, 220 P. 1114, while perhaps the best discussion of it is to be found in the dissenting opinion of Faris, J., in Larabee Flour Mills v. First National Bank (C. C. A.) 13 F.(2d) 330. Our case, Anheuser-Busch v. Clayton, cited in support of the augmentation theory, really decides no such thing. It went off upon plaintiff's conceded inability to trace the funds. It was there said: "The relation between appellant and the McNab Bank as to the draft on Morris * * * was that of principal and agent; but, in order to enforce a trust in favor of appellant as to any money

collected on said draft, it must be specifically traceable into the hands of the receiver. * * * There is nothing to indicate that this amount was separated and kept unmingled with the bank's own money; but, on the contrary, it is conceded that it is undistinguishable from the * * * bank's own money, and cannot be traced * * * in the hands of the receiver."

This narrow view that mingling and confusion of trust funds with the general funds of the bank destroys the trust, because the particular money cannot be identified and traced, is no longer entertained. Dixon v. Hopkins and other cases supra.

We return, then, to the question which determines this case, whether from the facts alleged it may be implied that the city and the St. Petersburg bank agreed that, after collection accomplished, the St. Petersburg bank, no longer agent, but debtor to the bank, might appropriate the funds collected for it as its own, accountable to the city only as its debtor for an equivalent sum.

The bill alleges that the item was sent in the usual course of business for payment and remittance. It is the settled law in Florida, where the Massachusetts rule has been in force since 1909 by virtue of section 6834, Compiled General Laws of Florida 1927, that any bank receiving a check in Florida in the usual course of business, for collection and remittance, receives it as agent and holds the proceeds in trust for the owner. Edwards v. Lewis, 98 Fla. 956, 124 So. 746, 750; nor does the fact that the drawee bank makes the collection on itself affect the existence of the agency—trust relation, Id.; Myers v. Federal Reserve Bank (Fla.) 134 So. 600, 605; City Bank of Fort Lauderdale v. Hart (Fla.) 136 So. 446, 447; nor the fact that section 6096, Compiled General Laws of Florida, providing for charging exchange on collections, authorize a bank, to which a check or checks are forwarded by mail, to pay or remit the same at its option either in money or in exchange drawn on its reserve agents in the city of New York, or in any reserve city within the Sixth Federal Reserve District, and charge exchange therefor. In Myers v. Federal Reserve Bank, supra, where the bank, for its convenience and for its protection against liability for loss attendant on the transportation of money in currency, as well as to save costs, used one of its banking conveniences by drawing a check on its reserve agent, the court said: "Under the circumstances, we think that in passing on the rights of the parties here inter sese we should look

at the real nature of the transaction, and apply to it the rule which would govern the case, had actual cash, instead of remittance by check, been prepared for delivery, but never delivered."

Appellee concedes this to be the rule of the Florida decisions. It contends that the rule so announced is not the correct one, and that, this being a matter of general law, this court must decide the question for itself.

We do not agree with appellee that the rule followed in Florida is wrong. We think it is right. It is entirely true that the authorities are in confusion on the point. One line of which, Citizens' Bank v. Bradley, 136 S. C. 511, 134 S. E. 510, may be referred to as typical, holds that banking usage requires the conclusion that it was impliedly agreed, when the check was sent on for collection, that the bank collecting it should not be responsible for the delivery in specie of the amount collected, but could take over the amount, setting up its liability for an equivalent amount in place of its obligation for the thing. The other line, of which Federal Reserve Bank v. Peters, 139 Va. 45, 123 S. E. 379, 42 A. L. R. 742, and Federal Reserve Bank v. Millspaugh, 314 Mo. 1, 282 S. W. 706, and Hawaiian Pineapple Co. v. Browne, supra, are representative, holds that the relation of principal and agent continues until payment. We think this view more just, and that it better affords the protection which the owner of an item under the Massachusetts rule, that the collecting bank is his agent, ought to have accorded to him against the risk of finding himself in the position of having under that rule released the drawer whom he knows, and whose credit he is satisfied with, and taken in lieu thereof as debtor a bank or collecting agent, as to whose solvency he knows nothing, and in whose selection he had no say.

Even the federal authorities denying recovery, in the absence of that kind of augmentation which brings new money from outside into the bank, support this view, for they hold that, if the collection items are on other banks and new money through their collection comes into the collecting bank, it holds this money in trust for the owner. They deny recovery where the item is on the collecting bank, not upon the theory that there was an agreement that the relation of debtor and creditor should after collection exist, but because there has been no augmentation.

Mr. Turner's article, note 1, supra, presents most interestingly from both its practical and its legal aspects the situation of the owner of an item collected by the drawee bank. He discusses the early view that it was not permissible to send an item to the drawee bank for collection, generally held prior to the passage of direct forwarding statutes. State v. Bismarck Bank, 57 N. D. 52, 220 N. W. 636; Federal Reserve Bank v. Malloy, 264 U. S. 160, 44 S. Ct. 296, 68 L. Ed. 617, 31 A. L. R. 1261; but see our case, City of South Jacksonville v. Jacksonville Traction Co. (C. C. A.) 50 F.(2d) 839. He shows how through banking practice and statutory provision the custom is now well-nigh universal to make drawee banks collecting agents, and at pages 486, 487, he sympathetically presents the unfortunate plight of the owner of the item in many cases, if, the obligation of the drawer discharged, he is compelled willy-nilly, by an arbitrary rule of law, to accept in lieu of it that of an insolvent debtor whom he did not choose, and whom he does not even know. He makes a strong case for the position that the owner of the item ought at least to have accorded to him the right, which a principal usually has, to have some say in whether his agent and trustee for collection shall become his simple debtor for payment.

Upon full consideration we think upon the pleadings before us that the agency which existed for the collection continued for the remittance. That all that may be said to have been implied into the transaction to at all abate the rigor of the common-law obligation of the bank to at once segregate and remit the cash called for (Federal Reserve Bank v. Malloy, 264 U. S. 160, 44 S. Ct. 296, 68 L. Ed. 617, 31 A. L. R. 1261) is an agreement that the bank could, for its own convenience, remit by draft. Notwithstanding, however, this agreement, the funds collected by the bank for remittance to its principal were, until actually paid, held by the collecting agent, not as its own money, but as money of its principal. That only when the remittance has been completed by payment of the amount does the agency terminate and the title to the money collected pass to the collecting bank. That, if before this has been accomplished the money collected is mingled with the bank's funds, those funds, as long as that amount remains there, are charged with a trust for its payment. Of course, if the bank's moneys are dissipated before they reach the receiver's hands, the trust fails, not because it did not exist, but for inability to trace the funds. St. Louis & S. F. v. Spiller, 274 U. S. 305, 47 S. Ct. 635, 71 L. Ed. 1060;

Schuyler v. Littlefield, 232 U. S. 710, 34 S. Ct. 466, 58 L. Ed. 806; Dixon v. Hopkins (C. C. A.) 56 F.(2d) 783.

The allegations of this bill plainly present facts which show that the bank received money of plaintiff's for a special purpose, to wit, to remit it, to which it was bound to apply it; that it has not so applied it, and that it still has the money. Under such circumstances, equity charges a trust upon the funds in the hands of the receiver.

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.