[Civil No. 2878.  Filed April 22, 1930.]

[287 Pac. 297.]

N. C. BLEDSOE, O. J. BAUGHN, GEORGE J. ROSKRUGE, MORRIS GOLDWATER, CHARLES C. WOOLF, G. A. BRIDGE, and HARRY A. DRACHMAN, as Trustees of the Property and Assets of Grand Lodge of Free and Accepted Masons of Arizona, an Unincorporated Fraternal and Benevolent Organization, Appellants, v. A. T. HAMMONS, as Superintendent of Banks of the State of Arizona, and as Ex-officio Receiver of the PRESCOTT STATE BANK OF PRESCOTT, ARIZONA, an Insolvent State Banking Corporation, Appellees.

Messrs. Moore, Elliott & Shimmel, for Appellants.

Mr. John A. Ellis, for Appellees.

ROSS, J.—This suit was brought by the trustees of the Grand Lodge of Free and Accepted Masons of Arizona against A. T. Hammons, superintendent of banks and, as such, receiver of the Prescott State Bank, an insolvent, to impress a trust upon the latter's assets in favor. of the lodge. The preference sought was denied, but the demand was allowed as a general claim, and the lodge appeals.

It appears from a stipulation of the parties that the facts are, in substance, as follows: That for several years prior to November 19th, 1925, R. N. Fredericks, now deceased, as treasurer of the Grand Lodge of Free and Accepted Masons of Arizona, had kept the funds of the lodge commingled with his personal funds in his personal account in the Prescott State Bank, with the exception of $2,160.73 which was kept in an account denominated "Masonic Home Endowment"; that on November 19th, 1925, Fredericks drew a check upon said Masonic Home Endowment account, and opened a new account denominated "R. N. Fredericks, Treasurer Grand Lodge, General," and deposited the check drawn upon the Masonic Home endowment account in such Grand Lodge general account; that on the same. day Fredericks, in the usual and ordinary course of business, drew three checks upon his personal account and deposited them as follows: R. N. Fredericks, treasurer Masonic Home journal fund, $8,515.67. R. N. Fredericks, treasurer A. L. Grow fund, $876.93. R. N. Fredericks, treasurer Masonic Home endowment fund,

$15,703.01. That none of the transactions herein mentioned as occurring November 19th, 1925, increased the assets of the Prescott State Bank or those later coming into the hands of the receiver, except in the manner above set out, but simply constituted a transfer of funds from a long existing account to the accounts above mentioned; that said Fredericks at said time had a sufficient amount of funds to his credit in said bank from which said checks could be paid and were paid; that the same amounts appeared to the credit of the several funds as above set out at the time the receiver took possession of the bank six days later; that Charles H. Hinderer, at said date, was vice-president and cashier of the bank, had been for three years actively engaged in the affairs of the bank as director and officer, during such time personally and constantly gave his attention to the duties of the offices he held and that the deposit slips for the foregoing deposits were in the handwriting of Hinderer; that on the nineteenth day of November, 1925, the bank was in possession of recoverable assets exceeding $1,000,000, and at the time the bank examiner took possession of the bank on November 25th, 1925, the recoverable assets of the bank were likewise in excess of $1,000,000; that from November 19th, 1925, up to and including the time of the closing of the bank and the taking possession by the bank examiner, the assets of the bank remained in approximately the same amount; that on the nineteenth day of November, 1925, and for some time prior thereto and at all times subsequent thereto, Prescott State Bank was insolvent and not in condition to pay its debts in the ordinary course. It was admitted that Homer R. Wood, deputy superintendent of banks and receiver of the Prescott State Bank, if duly sworn would testify that he was familiar with the condition of the bank from November 19th and for some time prior thereto and at all times subsequent

thereto; that said bank was hopelessly and irretrievably insolvent and not in condition to pay its debts in the ordinary course, and that such condition was reasonably apparent to any person familiar with the condition of the bank at such time; that the condition at such times was such that it was reasonably apparent to any person familiar therewith that the bank would presently be unable to meet its oligations as they were likely to mature, and that it could not and would not pay to the said R. N. Fredericks, as treasurer of said Grand Lodge, the sums of money hereinbefore set out on demand or at all.

While we have stated all the facts stipulated, we regard the case as turning upon the effect of what was done between Fredericks and the bank on November 19th. Indeed, appellant predicates its right to be preferred on that transaction. It admits that up to that time the relation between the bank and Fredericks was that of debtor and creditor, as well to the trust fund as to his personal funds, but it contends that the paper transaction of that date was in fact a new deposit, "irrespective of its source," and that it should be treated as though Fredericks had first opened an account on that date with the bank and deposited to himself as treasurer of the lodge actual cash. It is asserted that when this account was opened the bank was, to the knowledge of its officers, hopelessly insolvent and by the acceptance of the deposit perpetrated a fraud on the depositor and thereupon became and was a trustee *ex maleficio* of such funds. It is obvious that if the transaction of November 19th had the effect contended for by appellant the essential facts of augmentation and identification entitling one to a preference are established.

First, was there a new deposit on the 19th of November? We think what was done on that date was no more nor less than an exposition and acknowledgment by Fredericks that the funds carried in bank in

his personal account and as his personal funds were in part trust funds of the lodge. By such paper transaction the books of the bank indicated what part of the funds he had deposited "for several years prior to November 19th" as his own were trust funds of the lodge. It did not have the effect of changing his relation to such funds. The ownership of the money was not changed from him to the lodge. It belonged to the lodge before the change in bookkeeping just as much as after the change. Without indulging the fiction that a mere alteration of the method of bookkeeping changed the ownership of the funds, there could be no augmentation of the assets of the bank. The change did not add a five-cent piece to the bank's assets or change in the least Fredericks' relation thereto. It was a general deposit after the change as before. So far as the relation between the bank and Fredericks was concerned, it was all the time that of debtor and creditor. The bank owed Fredericks the amount of the trust deposit and on his demand in proper form was obligated to pay it to him. As between him and the bank such funds possessed no trust quality, and when the bank failed he had no right to any preference. 7 C. J. 628, § 305.

What was done on November 19th did not constitute a new deposit or a deposit of any kind. It was simply a belated written acknowledgment by Fredericks on the books of the bank that the funds of the lodge, which he had been receiving and commingling with his personal funds "for several years prior to November 19, 1925," were in fact not his, but the lodge's. The deposits were actually made during the "several prior years" and at a time when the bank's solvency was unquestioned.

The appellant, to sustain its contention that there was a new deposit on November 19th, relies upon a line of cases which hold that if the payee of a check deposits the check in the bank on which it is drawn,

the assets of the bank are augmented thereby just as really as if he had presented the check to the paying teller, obtained cash therefor, and then paid it into the bank through the receiving teller. Some of the cases cited by appellant in support of this view are *Hawaiian Pineapple Co.* v. *Browne,* 69 Mont. 140, 220 Pac. 1114; *Messenger* v. *Carroll Trust & Sav. Bank,* 193 Iowa 608, 187 N. W. 545; *Goodyear Tire & Rubber Co.* v. *Hanover State Bank,* 109 Kan. 772, 21 A. L. R. 677, 204 Pac. 992; *Northwest Lumber Co.* v. *Scandinavian American Bank of Seattle,* 130 Wash. 33, 39 A. L. R. 922, 225 Pac. 825; *State* v. *McKinley County Bank,* 32 N. M. 147, 252 Pac. 980. The rule announced in these cases, as we read them, has application only when there has been a complete change of title or ownership of the fund and in which the bank acted as agent in making collections but because of insolvency had not paid the money to its principal, or had paid it with worthless paper, or to cases of special deposit. None of the cases relied upon is in point.

We might stop here, for if the transaction of November 19th did not augment the assets of the bank, the appellant is not entitled to a preference. *Jarvis* v. *Hammons,* 32 Ariz. 444, 259 Pac. 886; *Bashford-Burmister Co.* v. *Hammons, ante,* p. 173, 283 Pac. 926; *Hammons* v. *National Surety Co., ante,* p. 459, 287 Pac. 292.

We cannot pass over, without some notice, the contention of appellant that as a result of the transaction of November 19th the bank became trustee *ex maleficio* of the lodge's funds. Under no circumstances could that be true unless what was done on that day was a new deposit. Although it is clear to our minds that it was not a new deposit, treating it as such, what is the result? We will not in this connection undertake to decide from the stipulated facts whether the officers of the bank on the 19th of

November knew the bank was hopelessly insolvent. That it was in fact is certain, but that the officers knew it is a very different question. Granting that they knew it was insolvent, and that the bookkeeping transaction of that day amounted to a new deposit, still the acceptance of it might be no fraud upon the depositor. The rule that converts a bank into a trustee *ex maleficio,* when its officers knowing it to be insolvent receive from the general public deposits, presupposes that the depositor is ignorant of the bank's insolvent condition. It is to protect the innocent and confiding (*Raynor* v. *Scandinavian-American Bank,* 122 Wash. 150, 25 A. L. R. 716, 210 Pac. 499; 7 C. J. 730, § 484), and not the officers themselves or others who have actual knowledge of the bank's insolvent condition. It is not shown by the stipulated facts what relation Fredericks may have borne to the bank on November 19th. It may be that he was not in fact overreached or deceived as to the condition of that institution. If he were an officer of the bank, or if he otherwise knew on the 19th of November the bank was hopelessly insolvent, and notwithstanding made a deposit, to give him or the beneficiary a preference would be converting a wholesome rule for the protection of the innocent into a rule for the protection of the evil and designing depositor. In the absence of a showing as to whether Fredericks knew or did not know of the bank's insolvency on the 19th of November, should we assume that he did not know and that he was an innocent depositor? Since there was, as we have seen, no deposit on that day, and since the deposits were all made at a time when the bank was solvent, it is not necessary to answer the question.

The judgment is affirmed.

LOCKWOOD, C. J., and McALISTER, J., concur.