MALIA, State Bank Com'r, for Benefit of CREDITORS OF PAHVANT VALLEY BANK, v. ROBISON.

No. 5569. Decided April 22, 1935. (43 P. [2d] 939.)

*Willard Hanson*, of Salt Lake City, for appellant.

*C. D. McNeely*, of Delta, and *Claude F. Baker*, of Eureka, for respondent.

FOLLAND, Justice.

This is an action in trover for the alleged conversion by appellant of certain notes valued at $1,395.07 belonging to the Pahvant Valley Bank, now a defunct corporation. Plaintiff's complaint alleges that the Pahvant Valley Bank, hereinafter referred to as the bank, was and became insolvent January 16, 1932, and was closed for the transaction of further banking business; that on February 10, 1932, the plaintiff, as state bank commissioner, became liquidator of the defunct bank; that during the times mentioned, and until the closing thereof, the defendant, Parker P. Robison, was the cashier and a director of the bank; that on or about January 9, 1932, the defendant, having on deposit in the bank the sum of $1,405.11, "wrongfully and illegally" drew a check for $1,395.07 "in pretended payment and satisfaction of an unauthorized, illegal and pretended transfer by said bank to defendant" of ten specified notes, amounting with principal and accrued interest, to the sum of $1,395.07; that the pretended transfer of the notes to the defendant was entirely void as made without authority and with the illegal and unconscionable purpose of preferring the defendant to other creditors; that the bank at that time was insolvent and was known by defendant to be insolvent; that defendant wrongfully took said notes from the bank and converted them

"to the sole personal use and benefit of defendant wrongfully and illegally," and the bank is, and has been since January 9, 1932, deprived thereof to its damage in the sum of $1,395.07, with interest, for which sum and interest plaintiff prayed judgment. The defendant answered, denying the conversion, and alleging that for two months prior to January 9, 1932, the bank had been acting as collecting agent for certain named parties in collecting moneys for them in the sale of hay; that the hay was shipped from Delta subject to bill of lading and sight draft in favor of the bank which the bank agreed with the individual shippers to collect and remit; that on January 9, 1932, the bank had proceeds from such sale of hay of $1,395.05 belonging to W. J. Oppenheimer for himself and as agent for others and to the Deseret Savings Bank; that the bank on said date assigned, transferred, and thereafter delivered to Oppenheimer and the Deseret Savings Bank, in lieu of cash, the ten notes described in plaintiff's complaint; that the notes were never assigned to defendant; and that defendant never at any time claimed, or now claims, any interest in them or the proceeds from them or any of them.

The case was tried to the court without a jury. The defendant was not represented by counsel, but conducted his own defense. The court made findings of fact on all issues favorable to plaintiff, and entered judgment against the defendant in the amount prayed for. The defendant appeals.

There is little conflict in the evidence. Parker P. Robison was a director and cashier of the bank, which was located at Delta, and was also cashier of the State Bank of Millard county at Fillmore, spending only a part of his time at Delta. In the summer and fall of 1931 the bank found it necessary to borrow money to keep intact its legal reserve, and to that end the board of directors authorized the cashier to borrow money and pledge the assets of the bank therefor. In the winter of 1931 Oppenheimer and other farmers and the Deseret Savings Bank had hay in stacks which they sold to Richardson and Smith at Midvale, Utah. Several drafts

were drawn on the purchasers with bills of lading attached and were collected by the bank through a Midvale bank. How the money was handled after it was collected by the bank is shown by the following testimony of Amelia Black, an employee of the bank:

"When the money came, we didn't know what to do with it, and we asked you (Parker P. Robison) what we should do with that money. The hay that was shipped out belonged to several people, there was drayage and freight expenses, and different expenses, and we asked you what to do. You said there was a lot of figuring to do, and probably the best way was to credit it to your checking account as agent.

"Q. Did you understand anything about drayage and freight and various qualities and average price, and so on? A. No, we didn't.

"Q. You don't think of any more direct way that Parker Robison could have handled the money? A. No.

"Q. By depositing the money in the agent's account, and he handled it that way, did he not? A. Why yes.

"Q. That was not all the funds that went in here? A. No.

"Q. You know that this collection of money for hay belonging to various farmers and turned over to Parker Robison, you know I made no claim to it at any time? A. Yes."

The ledger sheet of the account of Parker Robison, agent, was introduced in evidence and shows money received and paid out. The last receipt or deposit was on December 31, 1931, of $1,377.60. (This sum is not listed but computed.) On January 9, 1932, the balance in the account was $1,453.80, which on that day was transferred from the Parker Robison agent account to the Parker Robison account. On the same day a check was drawn on the Parker Robison account for $1,395.07, which sum was paid to the bank for the ten notes in controversy. Seven of these notes were delivered to W. J. Oppenheimer, including two notes signed by him amounting to $375 principal and $13.28 interest, two notes of A. O. Gardner, and four notes of H. O. Gardner amounting to $530 principal and $12.06 interest. Three notes were delivered to the Deseret Savings Bank, being those of I. H. Tippette, R. L. Turner, and R. V. Hardy, Jr., amounting to $435.58 principal and $20.15 interest. With the exception of the

notes delivered to the Deseret Savings Bank, the record is silent as to when the notes were due. The evidence fails to show that Robison personally had, or now has, any interest whatever in any of these notes. There was a balance of $58.73 which remained in the Parker Robison personal account after delivery of the check for $1,395.07 which is unexplained. It is inferable that this amount may have been retained by Parker Robison as a commission. Robison, however, testified positively he received no commission whatsoever in connection with the transaction. The three notes delivered to the Deseret Savings Bank were indorsed without recourse, "Pahvant Valley Bank by Parker P. Robison, Cashier," and again indorsed by the Deseret Savings Bank by the examiner in charge to the Investors' Finance Company. The transaction between the Deseret Savings Bank and Robison is described as follows by Mr. E. A. Smith, who at the time of the transaction was cashier of the Deseret Savings Bank:

"The Deseret Savings Bank was interested in a number of stocks of hay on different farms in Millard county belonging to it as rental. I asked Mr. Parker Robison if he would dispose of that hay for us, which he undertook to do. He made us two or three payments by check on the Pahvant Valley Bank, with himself as agent. He afterward came to me and said he had some money belonging to us in the Pahvant Valley Bank, but he said the Pahvant Valley Bank 'is so much in need of the money,' he asked me if we would not accept notes he could recommend as good, instead of us receiving cash.

"Q. Did he afterwards bring to you any notes? A. He did bring me some notes, I couldn't identify the name or the amount.

"Q. You agreed to take these notes and help the bank in lieu of having the cash from the bank for your hay? A. Yes."

Mr. Oppenheimer testified as follows:

"Q. Why, for what reason did Parker Robison bring Richardson and Smith to you? Were you owing the bank? A. I was owing the bank. I told Parker I wanted to pay those notes, if I could sell the hay, I told him to bring me a buyer, I wanted to find a market for my hay. * * *

"Q. Did you, when you sold this hay to Richardson and Smith, what arrangements, if any, was made with the Pahvant Valley Bank with

reference to this hay? A. The Pahvant Valley Bank was to look after the collections and see I got the money out of it. * * *

"Q. Now, did you authorize the bank to deposit that money to your credit, from this hay money? A. No. * * *

"Q. Did you authorize the bank to take that collection, that money and mix it into a checking or personal account? A. No.

"Q. You got all that was coming to you from the bank through the notes and cash? A. I happened to get—

"Q. You got a note that is not collected? A. Yes.

"Q. You made a settlement and you were satisfied? A. Yes.

"Q. In fact, you took these notes when you would rather have had the cash? A. Yes."

The evidence is conclusive that the $1,395.07 did not belong to Parker Robison, but did belong to W. J. Oppenheimer and others whom he represented and the Deseret Savings Bank, and that the notes were taken from the bank and indorsed over to Oppenheimer and the Deseret Savings Bank in lieu of the money collected by the bank on the sight drafts.

For the purpose of proving the insolvency of the bank on January 9, 1932, the plaintiff introduced a record entitled, "Cash Position of Pahvant Valley Bank from December 3, 1931, to January 18, 1932," which showed the amount of cash on deposit in the Deseret National Bank, the State Bank of Millard County, cash in vault, and cash items on each business day. As we analyze the case presented to us, it would seem that there are two questions to be determined: First, whether the evidence is sufficient to support the finding by the court that the Pahvant Valley Bank was insolvent on January 9, 1932, and that Parker P. Robison, as cashier, knew of such insolvent condition; and, second, whether Parker P. Robison was himself the agent for W. J. Oppenheimer and others of the farmers who had sold their hay, and of the Deseret Savings Bank, or whether the entire transaction was conducted by the Bank as agent for Oppenheimer, the Deseret Savings Bank, and the others, including the collection of the money on their sight drafts with bills of lading attached.

First, we shall consider the question of insolvency. The only evidence of the bank's condition on January 9th is the paper showing the cash position of the bank from December 3, 1931, to January 16, 1932, and which shows the following as the condition on January 9th:

Deseret National Bank ..........................$2,479.50
State Bank of Millard County .................... 5,084.51 OD
Cash in vault ................................... 3,060.18
Cash Items ..................................... 124.85

The bank suspended payments for a 30-day period on January 16th, and was taken over for liquidation by the state bank commissioner on February 10th. As already indicated, there was evidence that the bank had been in need of cash to keep up its reserve as early as July of 1931, when the board of directors authorized the cashier to borrow money on securities of the bank. It is strenuously contended by appellant that the evidence fails to prove insolvency on January 9th. This action against appellant is bottomed on the charge that the bank was insolvent on that date, and its insolvency was known to the defendant, and that his knowledge of that fact tainted the transfer of the notes. We are of the opinion the evidence is insufficient to prove insolvency on that date, and for that reason a new trial must be had. In the recent case of *Hadlock* v. *Callister*, 85 U. 510, 39 P. (2d) 1082, 1083. this court approved the following definition of solvency and insolvency of a bank from 7 C. J., p. 727, saying that the rule is so abundantly sustained by authority that further citation is unnecessary:

"A bank is solvent when it has enough assets to pay, within a reasonable time, all of its liabilities through its own agencies, and is insolvent when unable to meet its liabilities as they become due in the ordinary course of business, or, in shorter terms, when it cannot pay its deposits on demand in accordance with its promise."

In the case cited a fairly complete showing was made of the condition of the bank on the day of the alleged insolvency, including a statement of its assets and liabilities, the money

the bank owed on notes, and the amount of money it would have to borrow to maintain its legal reserve. In that case the evidence was held sufficient to show insolvency on the date alleged. A comparison of the evidence in that case with the evidence in this case rather forcibly demonstrates the lack of evidence in this case to prove insolvency. The court was not advised of the amount of the bank's assets and liabilities, its capital stock, the amount of money on deposit, or the amount of reserve necessary to comply with legal requirements, and whether actually impaired or not. No presumption is permissible that, because the bank closed its doors on January 16th, it was insolvent on the 9th. Many transactions may have occurred in the meantime to change its condition and relative position as to solvency. The mere fact that it was overdrawn at the State Bank of Millard County is not sufficient to show insolvency. There is not anything in the record to show that the overdraft was not a borrowing secured by assets according to the authorization of the directors the previous July. Where personal liability is sought to be imposed on an officer of a bank on the ground of the insolvency of the bank and his knowledge of such condition, the fact of insolvency must be shown. The evidence in this record fails to do so. *State* v. *Rodman,* 57 N. D. 230, 221 N. W. 25; *Sanders* v. *Owens* (Mo. App.) 47 S. W. (2d) 132. So far as disclosed by the record, the plaintiff could well have producd sufficient evidence from the books and records of the bank, presumably in his possession, to have shown the condition of the bank as to solvency or insolvency at the time of the transaction in question.

The second question involves a finding of fact. There is evidence in the record from which it may be inferred that Robison was acting as agent for the Deseret Savings Bank and the farmers who sold the hay, and as such agent deposited their money in the Bank. Such was the finding of the trial court. There is also evidence in the record from which a finding might be made that it was the bank which acted as agent for the farmers for the pur-

pose of collecting for them the amount of the bills of lading, and that such persons had never authorized the deposit of their money in the bank so as to create the relation of debtor and creditor, but that the bank was holding it in trust for them. A personal judgment against Mr. Robison might be justified under the pleadings of this case on the theory that he was agent for the hay owners with authority to deposit the money, and as such agent was liable to them for the fund, and, as between Robison and the bank, the deposit was Robison's, even though in fact the money did not belong to him but to his principals. The doctrine of the case of *Hadlock* v. *Callister*, supra, would then control. It was there held that the transfer by the bank to the administrator of an estate, who was also director of the bank, of the bank's securities of the value of the administrator's deposit when the bank was insolvent, was void as giving the administrator a preference over other depositors. See, also, *Bledsoe* v. *Hammons*, 36 Ariz. 489, 287 P. 297. On the other hand, if the money was handled by Robison as cashier of the bank, and the bank was the agent for the hay owners, and they had not authorized the deposit of the money so as to create the ordinary relation of debtor and creditor, Robison could not be held liable personally under the allegations of this complaint, even though it be assumed he acted in excess of his authority as cashier in transferring assets of the bank instead of paying cash to Oppenheimer and the Deseret Savings Bank. It is unnecessary to discuss the matter further, for the reason that on a retrial the evidence may not be the same as it is here.

The parties should be permitted to amend the pleadings if they be so disposed. It is difficult to see the justice of holding Robison personally liable for the value of the two notes signed by W. J. Oppenheimer amounting to $375 and interest. A portion of the money in the bank belonged to Oppenheimer. He testified he had wanted to pay his notes, and for that reason desired to sell the hay. While the evidence is not entirely satisfactory, it would seem the true nature of the transaction as to the Oppenheimer notes was

merely payment of the debt and return of the notes. If that is true, no judgment ought to run against Robison for the amount of the Oppenheimer notes.

The judgment is reversed, and the cause remanded to the district court of Millard ocunty for a new trial; costs to appellant.

ELIAS HANSEN, C. J., and EPHRAIM HANSON, MOFFAT, and WOLFE, JJ., concur.